**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

JOSE REYES RUIZ-VIDAL,
                          *Petitioner,*

v.

ALBERTO R. GONZALES, Attorney
General,

                          *Respondent.*

No. 04-73812

Agency No.
A34-639-824

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
October 20, 2006—San Francisco, California

Filed January 18, 2007

Before: Robert R. Beezer, Diarmuid F. O'Scannlain,
Stephen S. Trott, Circuit Judges.

Opinion by Judge O'Scannlain

**COUNSEL**

Robert B. Jobe, Law Office of Robert B. Jobe, San Francisco, California, argued the cause for the petitioner and filed a brief.

Jamie M. Dowd, Office of Immigration Litigation, U.S. Department of Justice, Washington, D.C., argued the cause for the respondent and filed a brief. Peter D. Keisler, Assistant Attorney General, and David V. Bernal, Assistant Director, were on the brief.

**OPINION**

O'SCANNLAIN, Circuit Judge:

We must decide whether the Department of Homeland Security has met its burden of proving that the petitioner is removable from the United States as an alien convicted of a law relating to a controlled substance.

I

A

Jose Ruiz-Vidal is a 49 year-old Mexican national who legally immigrated to the United States in August 1976. On October 26, 1998, Ruiz-Vidal pleaded nolo contendere in Cal-

ifornia Superior Court to one count of criminal possession of methamphetamine, in violation of Cal. Health & Safety Code § 11377(a) (the "1998 conviction"). Thereafter, the government sought to have Ruiz-Vidal removed from the United States on the basis of this conviction. Though Ruiz-Vidal was found removable by the immigration judge, he was granted cancellation of removal pursuant to § 240(A) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1229b(a), which allows the Attorney General to cancel the removal of an alien who is a permanent resident if that alien has been a permanent resident for five years, has resided continuously in the United States for seven years, and has not been convicted of an aggravated felony.

On February 10, 2003, Ruiz-Vidal was charged in California Superior Court with one count of violating Cal. Health & Safety Code § 11378 (possession of a controlled substance for purpose of sale) and one count of violating Cal. Health & Safety Code § 11379(a) (transportation of a controlled substance). The charging document alleged in Count I that Ruiz-Vidal had committed a felony, "to wit: POSSESSION FOR SALE OF A CONTROLLED SUBSTANCE, a violation of Section 11378 of the HEALTH & SAFETY CODE of California, in that [he] did unlawfully possess for purposes of sale a controlled substance, to wit: METHAMPHETAMINE." Count II alleged that he had committed a felony, "to wit: TRANSPORTATION OF A CONTROLLED SUBSTANCE, a violation of Section 11379(a) of the HEALTH & SAFETY CODE of California, in that [he] did unlawfully transport METHAMPHETAMINE." The record contains an abstract of judgment which shows that on March 24, 2003, Ruiz-Vidal pleaded guilty in the Superior Court of Alameda County to one count of violating Cal. Health & Safety Code § 11377(a). The crime listed on the abstract of conviction was "Possess Controlled Substance" (the "2003 conviction").

B

The Department of Homeland Security ("DHS") commenced removal proceedings against Ruiz-Vidal on Decem-

ber 16, 2003 with the issuance of a Notice to Appear, alleging that he was subject to removal under 8 U.S.C. § 1227(a)(2)(A)(iii). That section renders removable an alien convicted of an aggravated felony as defined in 8 U.S.C. § 1101(a)(43)(B), an offense relating to the illicit trafficking in a controlled substance, as described in Section 102 of the Controlled Substances Act ("CSA"), 21 U.S.C. § 802. On January 20, 2004, DHS added a second charge, alleging that Ruiz-Vidal was subject to removal as an alien who, after admission, had been convicted of a violation of a law relating to a controlled substance, as that term is defined in the CSA. 8 U.S.C. § 1227(a)(2)(B)(i). For reasons unrelated to this appeal, DHS eventually dropped the aggravated felony theory and proceeded only upon the controlled substance theory.

During a February 4, 2004, hearing, the immigration judge ("IJ") admonished the government that it had not yet advised the court as to what substance was involved in Ruiz-Vidal's 2003 conviction. The IJ told the government that it would have to prove that the drug involved was a controlled substance as defined in Section 102 of the CSA.[1] The IJ issued its oral decision on March 11, 2004. The IJ determined that the convictions involved methamphetamine, and further stated that "any substance listed in 11377 are [sic] included within the federal ambit of Section 102 of the Controlled Substances Act . . . So the Court does find that they are crimes involving a controlled substance." Accordingly, the IJ ordered that Ruiz-Vidal be removed to Mexico.

## C

Ruiz-Vidal appealed the decision of the IJ to the Board of Immigration Appeals ("BIA" or "Board"). The principal argument raised by Ruiz-Vidal to the Board was that DHS had not met its burden of proving that the substance which Ruiz-Vidal

---

[1]At the hearing before the IJ, Ruiz-Vidal denied DHS's allegations as a matter of burden of proof.

pleaded guilty to possessing in 2003 was a controlled substance under Section 102 of the CSA. On July 22, 2004, the BIA affirmed without opinion the IJ's order that Ruiz-Vidal be removed from the United States to Mexico. Thereafter, Ruiz-Vidal filed a "Motion to Reconsider" with the BIA, again raising only one argument: that DHS was required to prove that the substance involved in the 2003 conviction was a controlled substance, as defined by Section 102 of the CSA, and that it had not done so. The Board rejected that argument, ruling on August 24, 2004, that "[t]he respondent's motion fails to identify particular errors of fact or law in our prior decision. Instead, he merely presents the same arguments which we previously considered before rendering a decision in this case. We decline to revisit them."

Ruiz-Vidal filed a timely petition for review to this court.

II

A

Ruiz-Vidal first argues that his 1998 conviction cannot serve as a predicate for his removal because he was granted cancellation of removal for that conviction. He next argues that because Cal. Health & Safety Code § 11377(a) punishes the unauthorized possession of numerous substances not controlled under federal law, DHS was required to establish that the particular drug underlying the 2003 conviction is one that is controlled under federal law. He further argues that the 2003 record of conviction is silent as to the drug he was convicted of possessing.

The government does not argue, either in its briefs or during oral argument, that the record establishes unequivocally that the substance that formed the basis for Ruiz-Vidal's 2003 state conviction was controlled under federal law. Instead, the government's sole response on appeal is that this case should be remanded to the BIA so that it has "an opportunity to

decide [this] question and any related issues in the first instance.”

B

The government must prove by “clear, unequivocal, and convincing evidence that the facts alleged as grounds of [removability] are true.” *Gameros-Hernandez v. INS*, 883 F.2d 839, 841 (9th Cir. 1989) (citing *Woodby v. INS*, 385 U.S. 276, 286 (1966)). In this case, Ruiz-Vidal was charged with removability on the basis of his conviction of a controlled substance offense. 8 U.S.C. § 1227(a)(2)(B)(i).[2] That section provides:

> Any alien who at any time after admission has been convicted of a violation of (or a conspiracy or attempt to violate) any law or regulation of a State, the United States, or a foreign country relating to a controlled substance (as defined in section 802 of Title 21 [Section 102 of the CSA]), other than a single offense involving possession for one’s own use of 30 grams or less of marijuana, is deportable.

*Id.*

[1] The plain language of this statute requires the government to prove that the substance underlying an alien’s state law conviction for possession is one that is covered by Section 102 of the CSA.[3] This requirement has been both explic-

---

[2]We review de novo whether a conviction is a controlled substances offense that renders Ruiz-Vidal removable. *Cazarez-Gutierrez v. Ashcroft*, 382 F.3d 905, 909 (9th Cir. 2004).

[3]The government concedes in its brief that this is true: “[T]he government was required to show that Ruiz’s criminal conviction was for possession of a substance not only listed in the California statute under which he was convicted, but also contained in section 102 of the Controlled Substances Act.” Although we need not accept the government’s concession on a matter of law, *United States v. Miller*, 822 F.2d 828, 832 (9th Cir. 1987), as we explain below, we agree with its formulation of the issue.

itly and implicitly acknowledged in numerous decisions of the BIA and this court. In *Matter of Paulus*, 11 I. & N. Dec. 274 (B.I.A. 1965), the Immigration and Naturalization Service ("INS") sought to remove an alien on the basis of a conviction for violating Cal. Health & Safety Code § 11503. The information charged that Paulus "did offer unlawfully to sell and furnish a narcotic to a person and did then sell and deliver to such person a substance and material in lieu of such narcotic." *Id.* at 274-75. The deportation proceedings were terminated by a special inquiry officer, who reasoned that "the record being silent as to the narcotic involved in the conviction it is possible that the conviction involved a substance (such as peyote) which is a narcotic under California law but is not defined as a narcotic drug under federal law." *Id.* at 275. The INS appealed, and the Board dismissed the appeal, agreeing with the special inquiry officer that because the record was silent as to the narcotic involved, it could not be said for immigration purposes that Paulus had been convicted of a law relating to narcotic drugs.[4] *Id.* The reasoning of *Paulus* has been followed by the BIA in other cases as well. *See Matter of Mena*, 17 I. & N. Dec. 38, 39 (B.I.A. 1979) (upholding an order of deportation where the record of conviction revealed "beyond doubt that the 'controlled substance' the respondent had in his possession was heroin"); *Matter of Hernandez-Ponce*, 19 I. & N. Dec. 613, 616 (B.I.A. 1988) (noting that "[p]hencyclidine is listed as a controlled substance under the Controlled Substances Act").

**[2]** In *Medina v. Ashcroft*, 393 F.3d 1063 (9th Cir. 2005), we implicitly acknowledged the requirement that the government prove that the underlying substance is controlled by Section 102 of the CSA. At issue in *Medina* was whether a Nevada conviction for attempting to be under the influence of THC-carboxylic acid rendered an alien removable under 8 U.S.C. § 1227(a)(2)(B)(I). *Id.* at 1065-67. The court focused

---

[4]Although *Matter of Paulus* was construing the requirements of 8 U.S.C. § 1251, that section has now been transferred to 8 U.S.C. § 1227.

on whether THC-carboxylic acid was akin to marijuana, and therefore whether the exception for a conviction for one's own use of 30 grams or less of marijuana applied to the case. *Id.* For our purposes, however, what is important about this case is that both the majority and dissent acknowledged, at least implicitly, the requirement that the substance be one that is controlled under federal law. *Id.* at 1065 n.3 ("THC stands for tetrahydrocannabinol, a controlled substance."); *id.* at 1067 (Rymer, J., dissenting) ("THC is listed as a controlled substance on both the Nevada schedule of controlled substances and the federal schedule—and it is listed separately from marijuana."); *see also Cazarez-Gutierrez*, 382 F.3d at 918; *Gousse v. Ashcroft*, 339 F.3d 91 (2d Cir. 2003) (considering whether a substance is controlled under both state and federal law in the context of an aggravated felony for drug trafficking).[5] Thus, in order to prove removability, the government must show that Ruiz-Vidal's criminal conviction was for possession of a substance that is not only listed under California law, but also contained in the federal schedules of the CSA.

## III

Applying these principles, we must determine whether either of Ruiz-Vidal's convictions may serve as a predicate removal offense for purposes of 8 U.S.C. § 1227(a)(2)(B)(I).

---

[5]We acknowledge that many of our decisions have broadly construed the "relating to" language in 8 U.S.C. § 1227(a)(2)(B)(i). *See, e.g., Luu-Le v. INS*, 224 F.3d 911 (9th Cir. 2000) (finding a conviction for possession of drug paraphernalia to be a controlled substance offense); *Johnson v. INS*, 971 F.2d 340, 342-43 (9th Cir. 1992) (finding an alien deportable for guilty plea to "travel[ing] in interstate commerce . . . with the intention of distributing the proceeds derived from the unlawful distribution of narcotics and controlled substances"). Nonetheless, we believe that where a conviction for possession of a particular substance is at issue, 8 U.S.C. § 1227(a)(2)(B)(i) requires that at a minimum the substance be listed on the federal schedules. To hold otherwise would be to read out of the statute the explicit reference to Section 102 of the CSA.

## A

**[3]** We first consider whether Ruiz-Vidal's 1998 conviction may serve as a predicate removal offense. We need not be detained long by this inquiry. Ruiz-Vidal previously was found removable on the basis of this conviction, but was granted cancellation of removal. 8 U.S.C. § 1229b. The government is not entitled to a second bite at the apple; it may not use this conviction again as a predicate removal offense.

## B

We next consider whether Ruiz-Vidal's 2003 conviction may serve as the predicate offense for his removal as an alien convicted of a law relating to a controlled substance.

## 1

**[4]** We note that California law regulates the possession and sale of numerous substances that are not similarly regulated by the CSA. For instance, the possession of apomorphine is specifically excluded from Schedule II of the CSA, s*ee* 21 C.F.R. § 1308.12(b)(1), but California's Schedule II specifically includes it. *See* Cal. Health & Safety § 11055(b)(1)(G).[6] Cal. Health & Safety Code § 11033 punishes the possession of optical and geometrical isomers; the CSA, in contrast, generally punishes the possession of optical isomers alone. 21 C.F.R. § 1300.01(b)(21). We must, therefore, conclude that the IJ was in error in stating that "any substance listed in 11377 are [sic] included within the federal ambit of Section 102 of the Controlled Substances Act[;]" the simple fact of a conviction under Cal. Health & Safety Code § 11377 is insufficient. We next look to the record of convic-

---

[6]Other substances such as Androisoxazole, Bolandiol, Boldenone, Oxymestrone, Norbolethone, Quinbolone, Stanozolol, and Stebnolone are punishable only under California law. *See* Cal. Health & Safety Code § 11056(f).

tion. *See Tokatly v. Ashcroft*, 371 F.3d 613, 620, 622 n.8 (9th Cir. 2004).

2

**[5]** In undertaking an analysis of the record of conviction, we "may consider the charging documents in conjunction with the plea agreement, the transcript of a plea proceeding, or the judgment to determine whether the defendant pled guilty to the elements of the generic crime." *United States v. Corona-Sanchez*, 291 F.3d 1201, 1211 (9th Cir. 2002) (citing *United States v. Bonat*, 106 F.3d 1472, 1476-78 (9th Cir. 1997)). Although charging papers alone are never sufficient, *United States v. Parker*, 5 F.3d 1322, 1327 (9th Cir. 1993), "charging papers may be considered in combination with a signed plea agreement," *Corona-Sanchez*, 291 F.3d at 1211 (citing *United States v. Sweeten*, 933 F.2d 765, 767, 769-70 (9th Cir. 1991).

**[6]** The administrative record in this case contains only two documents relating to Ruiz-Vidal's 2003 conviction. The first charges Ruiz-Vidal with two crimes: (1) a violation of Cal. Health & Safety Code § 11378 (possession for purpose of sale); and (2) a violation of Cal. Health & Safety Code § 11379(a) (unlawful transportation). In both counts, the charging document lists the controlled substance underlying the conviction as methamphetamine. The other document in the record is an abstract of judgment which states that Ruiz-Vidal pleaded nolo contendere to a single charge of violating Cal. Health & Safety Code § 11377(a). The crime is described as "Possess Controlled Substance."

We were confronted with a similar situation in *Martinez-Perez v. Gonzales*, 417 F.3d 1022 (9th Cir. 2005). In that case, only three documents were before the court: (1) an information charging the defendant with second-degree robbery in violation of § 211 of the California Penal Code; (2) a minute order memorializing a probation violation hearing;

and (3) an abstract of judgment documenting the defendant's plea to a violation of § 487(c) of the California Penal Code. *Id.* at 1028-29. We held that based upon those documents, it was not possible to determine whether the defendant had pleaded guilty to all elements of a theft offense, as generically defined. We reasoned that because the defendant had pleaded guilty to an offense different from the one charged in the information, "[t]he information . . . is not the sort of 'generically limited charging document' indicating that the plea necessarily rested on the fact identifying the burglary as a generic theft offense as defined in *Corona-Sanchez*." *Id.* at 1029.

**[7]** We believe *Martinez-Perez* to be controlling in this situation. As in that case, Ruiz-Vidal did not plead guilty to an offense that was charged in the information. Here also, the administrative record contains no plea agreement, plea colloquy, or any other document that would reveal the factual basis for Ruiz-Vidal's 2003 conviction. *Id.* (citing *Parilla v. Gonzales*, 414 F.3d 1038, 1044 (9th Cir. 2005)); *see also Shepard v. United States*, 544 U.S. 13, 24 (2005) (adhering to *Taylor*'s "demanding requirement" that the record of conviction consist only of documents showing that a plea "necessarily admitted" facts equating to the generic crime). Under *Martinez-Perez*, there is simply no way for us to connect the references to methamphetamine in the charging document with the conviction under Cal. Health & Safety Code § 11377(a).

**[8]** We are thus left only to speculate as to the nature of the substance. But speculation is not enough. "[W]hen the documents that we may consult under the 'modified' approach are insufficient to establish that the offense the petitioner committed qualifies as a basis for removal . . . we are compelled to hold that the government has not met its burden of proving that the conduct of which the defendant was convicted constitutes a predicate offense, and the conviction may not be used as a basis for removal." *Tokatly*, 371 F.3d at 620-21. We therefore conclude that DHS has failed to establish unequivo-

cally that the particular substance which Ruiz-Vidal was convicted of possessing in 2003 is a controlled substance as defined in section 102 of the Controlled Substances Act.

C

**[9]** A final word is in order about the government's argument that a remand is appropriate in this case under *INS v. Ventura*, 537 U.S. 12 (2002). In *Ventura*, the Supreme Court cautioned that, generally speaking, "a court of appeals should remand a case to an agency for decision of a matter that statutes place primarily in agency hands." *Id.* at 16. A remand is especially appropriate where "[t]he agency can bring its expertise to bear upon the matter; it can evaluate the evidence; it can make an initial determination; and, in doing so, it can, through informed discussion and analysis, help a court later determine whether its decision exceeds the leeway that the law provides." *Id.* at 17.

But the government's *Ventura* argument is misplaced in numerous respects. First, as we recently explained in *Fernandez-Ruiz v. Gonzales*, 466 F.3d 1121 (9th Cir. 2006), *Ventura* has nothing to do with a case such as this. While in *Ventura* new evidence about changed country conditions could have been introduced on remand, here the record on remand would consist only of those documents already in the record. *Id.* at 1133. And the evidence in the record either supports the finding of removability or it does not. No further agency expertise is required to make that determination.

**[10]** We also think *Ventura* inapplicable because the record is clear that the disputed issue in this case was raised not once, but twice before the Board, which deemed the evidence in favor of removability to be sufficient. *See Fernandez-Ruiz*, 466 F.3d at 1133-34 ("*Ventura* undeniably involved an issue the BIA had not considered . . . . [B]y contrast, whether the offense underlying Fernandez-Ruiz's 2003 conviction was a crime of domestic violence under federal law is an issue the

BIA has already addressed . . ."). After his initial appeal from the IJ's decision was affirmed without opinion, Ruiz-Vidal filed a Motion to Reconsider which was identical in nearly all respects to the brief filed in this court. In response to this Motion, the Board found that "respondent's motion fails to identify particular errors of fact or law in our prior decision. Instead, he merely presents the same arguments which we previously considered before rendering a decision in this case. We decline to revisit them." The Board therefore has ruled on the issue in the first instance and a remand for reconsideration would be both unnecessary and inappropriate.

IV

The judicially noticeable documents in this case fail to support the BIA's determination that Ruiz-Vidal is removable as an alien convicted of a law related to a controlled substances offense. We grant the petition for review, reverse the order of removal, and remand the matter to the Board for disposition consistent with this opinion.

**PETITION FOR REVIEW GRANTED.**