**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

CHEUK FUNG S-YONG,
            *Plaintiff-Appellant,*

            v.

ERIC HOLDER JR., Attorney
General,
            *Defendant-Appellee.*

No. 07-70619

Agency No.
A35-747-485

ORDER
AMENDING
OPINION AND
AMENDED
OPINION

On Petition for Review from the
Board of Immigration Appeals

Argued and Submitted
November 21, 2008—Pasadena, California

Filed August 25, 2009
Amended March 9, 2010

Before: Richard D. Cudahy,* Harry Pregerson and
Michael Daly Hawkins, Circuit Judges.

Opinion by Judge Cudahy

---

*The Honorable Richard D. Cudahy, Senior United States Circuit Judge
for the Seventh Circuit, sitting by designation.

**COUNSEL**

Kathryn M. Davis, Pasadena, California, for the petitioner.

Gregory G. Katsas, Mary Jane Candaux, and Aimee J. Frederickson, U.S. Department of Justice, Washington, D.C., for the Attorney General.

---

**ORDER**

The Opinion filed on August 25, 2009, and appearing at 578 F.3d 1169 (9th Cir. 2009), is amended as follows:

At page 1174, at the end of the paragraph that reads "We have previously found that California law regulates the possession and sale of many substances . . . , and we must look further to demonstrate whether Yong's conviction renders him removable[,]" footnote "5" is inserted. The text of the footnote reads:

> 5 Although it is not entirely clear from our current precedents when the modified categorical approach may be employed if the particular statute is broader than the generic offense, *see United States v. Estrada-Espinoza*, 546 F.3d 1147, 1159-60 (9th Cir. 2008) (en banc), we have at least implicitly treated similar provisions of the California Health & Safety Code as sufficiently "divisible" into separate crimes so as to apply the modified categorical approach, *see Sandoval-Lua v. Gonzales*, 499 F.3d 1121, 1128-29 (9th Cir. 2007), and accordingly we continue to do so here.

At page 1176, in the first paragraph after the block quotation, the following is deleted: ", much less determined was the type of document that could be considered under *Taylor*"

At page 1176, the paragraph that begins "This is woefully insufficient[,]" is deleted. In its place, the following is substituted:

> This is woefully insufficient. Because there is no document in the record that proves Yong was convicted under Section 11378, we therefore GRANT Yong's petition and REVERSE the order of removal.

---

## OPINION

CUDAHY, Circuit Judge:

The question presented is whether the Department of Homeland Security has met its burden of proving that the petitioner is removable from the United States as an alien convicted of a law relating to a controlled substance. A second question is whether the petitioner has met *his* burden of proving he is eligible for relief from removal. Because there is no record documentation supporting the order of removal, or the ruling that the petitioner was barred from relief, we find for the petitioner in answer to both questions. Yet only the first answer is necessary to grant his petition for review and reverse the removal order. (Likewise, we need not address the petitioner's due process claims.)

## I

Cheuk Fung S-Yong, a native and citizen of Hong Kong (now the People's Republic of China) has been a lawful permanent resident of the United States since 1978, when he came to this country with his parents as a nine-year-old. In July 2006, the Department of Homeland Security issued Yong a notice to appear that charged him as removable from the United States because he was an alien who had been convicted of both (1) a "controlled substance offense" under 8

U.S.C. § 1227(a)(2)(B)(i),[1] and (2) an "aggravated felony" under 8 U.S.C. § 1227(a)(2)(A)(iii).[2] The notice specified only one prior offense, a September 21, 2005 conviction for the "Sale or Transportation of Controlled Substance, in violation of Section 11379(a) of the California Health and Safety Code."[3] The government argued that the Section 11379 conviction constituted both a controlled substance offense and an aggravated felony under the Immigration and Nationality Act (INA). The notice did not specify what kind of controlled substance gave rise to the Section 11379 conviction or whether the offense involved a sale.

Yong appeared at an initial hearing *pro se* but indicated that he wished to hire a lawyer. The immigration judge continued the hearing four times to allow Yong to find an attorney, but on October 25, 2006, three months after the initial hearing, Yong elected to proceed without counsel. The immigration judge then indicated that he would take a "pleading" from Yong and determine what issues would be raised in the case.

After preliminary questions confirming Yong's name and citizenship status, the immigration judge questioned Yong about the charges in the government's notice to appear to determine whether Yong was removable based on those

---

[1]Section 1227(a)(2)(B)(i) of the Immigration and Nationality Act (INA) states in relevant part: "Any alien who at any time after admission has been convicted of a violation of . . . any law or regulation of a State, the United States, or a foreign country relating to a controlled substance (as defined in section 802 of Title 21) . . . is deportable."

[2]Section 1227(a)(2)(A)(iii) states: "Any alien who is convicted of an aggravated felony at any time after admission is deportable."

[3]Cal. Health & Safety Code § 11379(a), entitled "transportation, sale, furnishing, etc.; punishment," states: "every person who transports, imports into this state, sells, furnishes, administers, or gives away, or offers to transport, import into this state, sell, furnish, administer, or give away, or attempts to import into this state or transport any controlled substance . . . shall be punished by imprisonment in the state prison for a period of two, three or four years."

charges. In particular, the immigration judge asked whether Yong had been convicted of the Section 11379 charge mentioned in the notice and confined for two years. Yong confirmed that he had been. The immigration judge then asked to look at the government's "conviction document." Before reviewing that document, however, the immigration judge asked Yong whether he had any fear of being returned to China or any reason to believe he would be subjected to torture there if he were removed from the United States. Yong answered no to both questions.

The immigration judge then indicated on the record that the government attorney "has handed me a conviction record." Without further identifying the document or confirming that it related to the Section 11379 conviction charged in the notice to appear, the immigration judge described the government's document as follows:

> I'm just verifying that we have a good document here. It shows you had two convictions, a Count 3 and Count 4. Count 3 would appear to be—let me read it for a second here. It's basically a conspiracy charge, that you and others conspired to commit the crime in [sic] sale or transportation of a controlled substance. And then it sets forth the overt acts that led to that. Count 4 is written in that you conspired to commit the—some other crimes with others. The question we have to look at is whether this Count 3 falls into that category. Basically, what this charges you with is sale or transportation. But the actual overt acts that you were charged with show that you must negotiated [sic] it and actually handed over 100 MDMA tablets, and—to the parties . . . That you actually handed a hundred tablets of the MDMA . . . to that person in the other car.

Yong conceded the accuracy of this description, as recited by the immigration judge, but argued that "that was not a sale.

I wasn't selling it." The immigration judge agreed there was no evidence in the document of a sale, and on that basis found that the conviction did not support the government's charge that Yong was removable for having committed an aggravated felony. The immigration judge sustained the government's other basis for removal, however, that Yong had been convicted of a controlled substance offense under Section 1227(a)(2)(B)(i) of the INA. The government then accepted the court's ruling that the Section 11379 conviction was not an aggravated felony and did not raise any other convictions that might qualify. The government's attorney did not move the unidentified document into the record, nor was any more said about it at the hearing.

The immigration judge then asked whether Yong had any other convictions. Yong said that he did. The immigration judge asked him to elaborate, and Yong explained that he had "another ecsta[s]y conviction . . . for possession for sales. . . . But they gave me a—less than a year." The immigration judge then explained why he was asking Yong about other convictions: "[I]f you actually have a possession for sale charge, even if they gave you straight probation on it, that will be an aggravated felony. It would bar you from certain types of relief." The immigration judge continued,

> You may not be deportable for it right now because they haven't charged it, but it would bar you from cancellation of removal for lawful permanent residents, and it would bar you from asylum. And it might even bar you from a type of Torture Convention protection. But you haven't indicated any threat in those areas. Do you understand?

Yong said he did. The immigration judge then asked the government's attorney whether he had a "rap sheet" on Yong, and when the attorney confirmed that he did, the immigration judge enlisted Yong's help finding the possession for sales conviction on the rap sheet. When the government's attorney

found the conviction, he said, "This is plainly different from the Orange County conviction, which was really the subject of our charge." The attorney went on to describe the conviction included in the rap sheet.

> Apparently, on July 28th of 2000, the defendant pled guilty to Count 1 of the charges against him at that time, which was a felony charge of possession of a controlled substance for sale under Section 11378 of the California Health and Safety Code. And he was convicted of that.

After confirming with Yong that this was the additional conviction that Yong had mentioned, the immigration judge concluded, "That is an aggravated felony. . . . Trafficking offense. So even though I haven't sustained the charge of deportability based on the 2005 conviction being an aggravated felony, that 2000 conviction would bar you from those forms of relief I told you about." The government's attorney did not move the rap sheet into the record, nor was any more said about it at the hearing.

The immigration judge concluded the hearing by explaining that "based on what we've discussed, I will find that you are subject to removal today on the controlled substance ground. And based upon the discussions we've had, your July 28th, 2000 conviction for possession for sale, coupled with what you've told me, you don't qualify for any relief."

The immigration judge's written order, entered the same day, stated that "[u]pon the basis of respondent's admissions, I have determined that the respondent is subject to removal on the charge(s) in the Notice to Appear." The order made no mention at all of the Section 11378 conviction, however, which Yong had helped identify in the rap sheet. Nor did the order explain that the immigration judge had found Yong ineligible for relief from removal based on his conclusion that the Section 11378 conviction was an aggravated felony.

Instead, the order stated only that "Respondent has made no application for relief from removal."

Yong appealed the immigration judge's decision to the Board, which affirmed the immigration judge's order of removal without an opinion. Yong then appealed to this court, arguing that there was insufficient documentation in the administrative record to sustain an order of removal or to find that he was ineligible for relief from removal. We agree. We therefore grant the petition for review and reverse the removal order.

## II

### A

Our jurisdiction rests on 8 U.S.C. § 1252. Section 1252(a)(2)(C) restricts review of final orders of removal based on certain enumerated crimes, including controlled substance offenses. 8 U.S.C. §§ 1252(a)(2)(C), 1227(a)(2)(B). Nevertheless, we retain jurisdiction to review removal orders based on such crimes where the petition raises "constitutional claims or questions of law." 8 U.S.C. § 1252(a)(2)(D). The government draws our attention to this limited power of review, but does not appear to argue that Yong's claims are foreclosed on this basis. This is wise. Yong clearly raises both constitutional and legal claims. We also have jurisdiction to determine our jurisdiction by deciding whether Yong is removable based on the criminal conviction relied upon by the immigration judge. *Huerta-Guevara v. Ashcroft*, 321 F.3d 883, 885 (9th Cir. 2003) (citations omitted). The government argues, however, that we lack jurisdiction to hear Yong's claims because he failed to exhaust his remedies below. In particular, the government argues that Yong failed to raise either his removal or his due process claims in his appeal brief to the Board. The government asserts that the only argument Yong raised below is that it was improper for the immigration judge to rely on the Section 11378 conviction to find Yong

ineligible for relief from removal, because that conviction was not charged in the notice to appear nor supported by documents in the record.

Fairly read, Yong's *pro se* brief to the Board raised each of the claims he now presents to us. With respect to removability, Yong argued that "[t]he only evidence the government proffers is an abstract of judgment establishing that respondent was convicted of the generic crime of sale and transportation of controlled substance California penal code § 11379 [sic]." This argument put the government on notice that Yong was challenging his removal because the record evidence did not support the conclusion that the Section 11379 conviction was a controlled substance offense under the INA. Likewise, Yong argued in his brief to the Board that, because the Section 11378 offense was not charged in the notice to appear, there was insufficient proof that he committed an aggravated felony that would bar relief from removal. The government concedes that Yong has preserved his claim for relief. The government also concedes that "Yong also appears to use § 11378 and § 11379 interchangeably" in his brief to the Board. The government seems to suggest by this that Yong was inattentive to the correct statutory section numbers and at times used the number 11379 even though he meant to challenge only the immigration judge's reliance on the 11378 conviction to find that he was barred from relief. Yet Yong also mentioned both convictions—by their separate section numbers—together in the same sentence and argued that the government failed to produce any documentation to support a conviction for *either* offense. We reject any suggestion that Yong's repeated reference to both sections of the California penal code was somehow fortuitous. Though his brief to the Board is inartful, Yong has challenged the immigration judge's reliance on both convictions and therefore has exhausted both his removal claim and his claim for relief from removal, and so we reach the merits of those claims.[4]

---

[4]Yong's due process claims were also likely adequately preserved, but because we do not reach those claims we need not decide whether they were exhausted below.

## B

**[1]** The immigration judge concluded that Yong was removable because his Section 11379 conviction was a "controlled substance offense" under 8 U.S.C. § 1227(a)(2)(B)(i). We review this conclusion de novo. *Cazarez-Gutierrez v. Ashcroft*, 382 F.3d 905, 909 (9th Cir. 2004). The government bears the burden of proving by "clear, unequivocal, and convincing evidence that the facts alleged as grounds for [removability] are true." *Gameros-Hernandez v. INS*, 883 F.2d 839, 841 (9th Cir. 1989) (citation omitted). Again, Section 1227(a)(2)(B)(i) provides:

> Any alien who at any time after admission has been convicted of a violation of (or a conspiracy or attempt to violate) any law or regulation of a State, the United States, or a foreign country relating to a controlled substance (as defined in section 802 of Title 21 [Section 102 of the Controlled Substances Act]), other than a single offense involving possession for one's own use of 30 grams or less of marijuana, is deportable.

We have repeatedly held that the plain language of this statute requires the government to prove that the substance underlying an alien's state law conviction for possession is one that is covered by Section 102 of the CSA. *See, e.g.*, *Ruiz-Vidal v. Gonzales*, 473 F.3d 1072, 1076-78 (9th Cir. 2007) (discussing cases). Thus, "to prove removability, the government must show that [petitioner's] criminal conviction was for possession of a substance that is not only listed under California law, but also contained in the federal schedules of the CSA." *Id.* at 1077-78. Under the "categorical approach" announced in *Taylor v. United States*, 495 U.S. 575 (1990), if the "full range of conduct" covered by the state statute falls within the scope of the INA provision, then the petitioner's conviction is "categorically a removable offense." *Alanis-Alvarado v. Holder*, 558 F.3d 833, 836 (9th Cir. 2009). If not, we move

on to a "modified categorical" approach in which we may consider a limited number of judicially noticeable documents to determine whether the defendant was in fact convicted of a removable offense. *Parrilla v. Gonzales*, 414 F.3d 1038, 1042 (9th Cir. 2005).

**[2]** We have previously found that California law regulates the possession and sale of many substances that are not regulated by the CSA, *Ruiz-Vidal*, 473 F.3d at 1078, and therefore that Section 11379 is "categorically broader" than Section 1227(a)(2)(B)(i) of the INA. *See Sandoval-Lua v. Gonzales*, 499 F.3d 1121, 1124 (9th Cir. 2007). This means that a conviction under Section 11379 does not necessarily entail a "controlled substance offense" under Section 1227(a)(2)(B)(i) of the immigration statute, and we must look further to determine whether Yong's conviction renders him removable.[5]

**[3]** In doing so, however, we are limited to "a narrow, specified set of documents that are part of the record of conviction." *Tokatly v. Ashcroft*, 371 F.3d 613, 620 (9th Cir. 2004). That is to say, the modified categorical approach hews to the categorical. It is a narrow exception. The set of noticeable documents includes the indictment (but only in conjunction with a signed plea agreement), the judgment of conviction, the minute order fully documenting the judgment, jury instructions, a signed guilty plea or the transcript from the plea proceedings. *United States v. Snellenberger*, 548 F.3d 699, 702 (9th Cir. 2008) (en banc); *Ruiz-Vidal*, 473 F.3d at 1078 (citations omitted); *Tokatly*, 371 F.3d at 620.

---

[5]Although it is not entirely clear from our current precedents when the modified categorical approach may be employed if the particular statute is broader than the generic offense, *see United States v. Estrada-Espinoza*, 546 F.3d 1147, 1159-60 (9th Cir. 2008) (en banc), we have at least implicitly treated similar provisions of the California Health & Safety Code as sufficiently "divisible" into separate crimes so as to apply the modified categorical approach, *see Sandoval-Lua v. Gonzales*, 499 F.3d 1121, 1128-29 (9th Cir. 2007), and accordingly we continue to do so here.

**[4]** Throughout the modified categorical approach cases analyzing whether particular kinds of documents may be considered, we have insisted that the point of the exercise is to determine *reliably*, and without the distractions associated with relitigating the underlying criminal case, whether the defendant was convicted of the elements of the generic crime as described in the immigration statute. *Tokatly*, 371 F.3d at 621; *see also Shepard v. United States*, 544 U.S. 13, 23 (2005). To this end, we have strictly prohibited immigration judges from looking behind the documentary record of conviction to the underlying facts of a prior offense. *Tokatly*, 371 F.3d at 622 ("We are required to determine whether Tokatly has been '*convicted* of a crime of domestic violence'—not whether he *in fact* committed such a crime."). We have also rejected the argument the government makes here, that we should make an exception to the "narrow, carefully-circumscribed scope of *Taylor* inquiries" to permit consideration of an alien's admissions to the immigration judge regarding the nature of his criminal conduct. *Id.* at 623.

**[5]** Here, the immigration judge relied solely on Yong's judicial admissions and an unidentified "conviction document" to determine that Yong's Section 11379 conviction was a controlled substance offense under the INA. There are no documents of conviction in the administrative record—indeed, there are no documents *at all* in the record, other than the government's two-page notice to appear—and it is impossible to tell from the hearing transcript the exact nature of the document the immigration judge relied upon. And though it may be tempting to assume that the government's proffered document meets *Taylor*'s strict standards, doing so would undercut the basis for that decision, which, again, is to determine the nature of the prior conviction with certainty and without collateral litigation. On this record, we have no way to review whether the document established with certainty that Yong's conviction was a controlled substance offense under the INA. The so-called conviction document might have been a newspaper clipping from the crime section, or

even something typed up on Department of Homeland Security stationery. We do not mean to impugn the immigration judge or the government's attorney in this case, but only to suggest that aside from preventing our review, the record in this case allows—perhaps invites—that kind of obfuscation. Supporting this conclusion is the fact that the government never supplemented the record with the mysterious "conviction document," nor does the government's attorney argue that the document was of the type that we may consider. Given the clarity of the case law on this subject, we can only assume this is because it was not. Or perhaps the government's attorney on appeal simply does not know. What is clear is that the government offers no explanation for this omission and, instead, argues that Yong's admissions alone constituted clear, convincing and unequivocal evidence that he was removable. Our case law is explicitly to the contrary, *Tokatly*, 371 F.3d at 623 ("[T]he IJ's consideration of the victim's testimony violated 'the settled proposition' that an Immigration Judge cannot adjudicate guilt or innocence.") (quoting *In re Pichardo-Sufren*, 21 I. & N. Dec. 330, 335 (BIA 1996)); *Huerta-Guevara*, 321 F.3d at 888 ("[E]ven if the facts as represented in Huerta's brief are taken as a true account of what she did, it is not clear that these are the elements to which she pled guilty."), and none of the government's cited cases suggests anything different. In each, the immigration judge was either presented with reliable documents of conviction *in addition to* the alien's judicial admissions, *Barragan-Lopez v. Mukasey*, 508 F.3d 899, 905 (9th Cir. 2007), or the issue was whether substantial evidence supported the immigration judge's *own* factual conclusions, not whether the record of prior conviction adequately supported removal under the modified categorical approach, *Young Sun Shin v. Mukasey*, 519 F.3d 901, 906 (9th Cir. 2008), op. withdrawn and superseded on rehr'g in part by *Young Sun Shin v. Mukasey*, 547 F.3d 1019 (9th Cir. 2008). In *Schroeck v. Gonzales*, 429 F.3d 947 (10th Cir. 2005), which is not binding on us, the question whether an immigration judge may rely on a

petitioner's admissions under the modified categorical approach likewise was not addressed. None of the government's cases makes any mention of *Tokatly* or its clear rule that immigration judges are prohibited from relying on an alien's judicial admissions. *See Tokatly*, 371 F.3d at 623:

> Applying *Taylor*, it is clear that the IJ was *not* entitled "to examine the facts behind the conviction" (except to the extent permitted by the modified categorical approach) or to consider the testimony of the crime victim. Indeed, the IJ's examination of the victim provides an example of the very fact-finding process that both the courts and the Board have deemed inappropriate and sought to avoid by strict adherence to the categorical and modified categorical methodology. In this respect, the IJ's consideration of the victim's testimony violated "the settled proposition" that an Immigration Judge cannot adjudicate guilt or innocence. *Pichardo*, 21 I & N Dec. at 335.

[6] The immigration judge's finding that Yong was barred from seeking relief from removal is flawed for the same reasons. The immigration judge found that Yong was ineligible for relief from removal because his Section 11378 conviction was an aggravated felony under 8 U.S.C. § 1227(a)(2)(A)(iii). But again, the purported Section 11378 conviction is not supported by *any* record evidence and was not even charged in the government's notice to appear. The immigration judge relied on Yong's admissions, coupled with the government attorney's assessment, which was based on a "rap sheet" that the immigration judge never even looked at. Based on this extra-record document and statements by Yong and the government's attorney, the immigration judge concluded that Yong had been convicted of possession for sale of a controlled substance that would constitute an aggravated felony under the INA.

[7] This is woefully insufficient. Because there is no document in the record that proves Yong was convicted under Sec-

tion 11378, we therefore GRANT Yong's petition and REVERSE the order of removal.