**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

BRYAN VINCENT I. PAGAYON, a.k.a.
Deny Moniker, a.k.a. Bryan
Vincent Idhaw,
                        *Petitioner,*

            v.

ERIC H. HOLDER Jr., Attorney
General,
                        *Respondent.*

Nos. 07-74047
      and
   07-75129

Agency No.
A45-622-497

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
April 13, 2011—San Francisco, California

Filed June 24, 2011

Before: Alex Kozinski, Chief Judge, N. Randy Smith,
Circuit Judge, and Frederic Block, District Judge.*

Per Curiam Opinion

---

*The Honorable Frederic Block, Senior United States District Judge for the Eastern District of New York, sitting by designation.

## COUNSEL

Victor Jih and Victoria Schwartz (argued), O'Melveny &
Myers LLP, Los Angeles, California; Jessica Barclay-Strobel
(argued), UCLA School of Law Ninth Circuit Clinic, Los,
Angeles, California, for the petitioner.

Michael C. Heyse, United States Department of Justice, Civil
Division, Office of Immigration Litigation, Washington, D.C.,
for the respondent.

---

## OPINION

PER CURIAM:

Bryan Vincent I. Pagayon petitions for review of an order
of the Board of Immigration Appeals directing his removal,
as well as the Board's order denying reconsideration. We
deny the petitions, and write principally to address Pagayon's
claim that the removal order was improperly based, in part, on
admissions he made before the immigration judge (IJ).

## I

Pagayon, a native of the Philippines, was a legal permanent
resident of the United States. On November 30, 2006, he was
placed into removal proceedings based on allegations that he
had been convicted of violations of (1) section 12021(a)(1) of
the California Penal Code, relating to possession of firearms
by felons and drug addicts, and (2) section 11377(a) of the
California Health and Safety Code, relating to possession of
controlled substances.

At an initial hearing before the IJ, the government produced
an abstract of judgment and the two informations that ostensi-
bly underlay the convictions. The IJ summarized the

documents—copies of which were given to Pagayon—as follows:

> They've given to you and to me a copy of an abstract of judgment list[ing] as Count A-l, possession, firearm, felon or addict. . . . Two-year sentence. . . . Count B-2, possession controlled substance.
>
> Attached to this is a copy of an information, possession of firearm by a felon, one prior, in violation of Penal Code 12021(a)(1), felony. . . . There's another information following. Count 2 there was listed as possession, controlled substance, 11377(a), listing it as methamphetamine. It looks like on the abstract of judgment it indicates convicted by jury as to the first count, and as to possession of controlled substance, it looks like it was based upon a plea.

When the IJ asked, "Are these your convictions?" Pagayon responded, "Yes, Your Honor."

Pagayon did not initially dispute the IJ's representation that those convictions rendered him removable. Instead, he applied for relief from removal and, in addition, advanced a claim of citizenship through his maternal grandmother. Based on the claim of citizenship, a successor IJ allowed Pagayon to withdraw his admission of removability.

At a later hearing before the new IJ, Pagayon testified as to the basis for his claim for relief from removal. Because the IJ did not make an adverse credibility determination, we take Pagayon's testimony as true. *See Kalubi v. Ashcroft*, 364 F.3d 1134, 1137 (9th Cir. 2004).

Pagayon's father worked as an investigator for the Philippines' National Bureau of Investigation. He was shot to death on November 27, 1984. Pagayon, then seven years old, recalled hearing family members and his father's co-workers

opining that his father had been murdered by members of the National Police (NP) in the course of an investigation into the NP's involvement in crime syndicates. No one was arrested or charged in connection with the death, and an official investigation had "no result."

Following his father's death, Pagayon saw a group of people, some wearing NP uniforms, "patrolling" the streets around his grandmother's house; someone later called the house to tell "family members not to file a complaint for [his] dad." When Pagayon's aunt tried to bring the circumstances of her brother's death to light, she was shot (though not fatally). Shortly thereafter, one of Pagayon's uncles pulled him out of school and told him the family needed to relocate. This process repeated itself often, triggered by warnings from family friends in the Philippine government that NP retaliation was imminent. It stopped only when Pagayon and his immediate family came to the United States in 1996; other family members emigrated to other countries.

At the conclusion of his testimony, Pagayon opined that he could not return to the Philippines because those responsible for his father's murder would find out and "assume that [he was] back for revenge [or] to expose them from whatever scheme that they're doing."

In an oral decision rendered on May 16, 2007, the IJ sustained the charges of removability based on Pagayon's prior admission to both convictions. He then held that Pagayon had no claim to United States citizenship.

Turning to Pagayon's claims for relief, the IJ concluded that the firearm conviction was an "aggravated felony" that rendered Pagayon ineligible for asylum. The IJ next addressed whether that conviction was also a "particularly serious crime" disqualifying Pagayon from withholding of removal. He concluded that "the nature and circumstances of the offense" and the length of the sentence showed that Pagayon

"can be considered a danger to the safety of persons and property in the United States as well as a danger to the community of which he is a member." Reaching the merits of the withholding claim in the alternative, the IJ accepted Pagayon's claim that his father had been murdered by the NP, but concluded that there was

> absolutely no evidence to indicate that [Pagayon] would be in any danger of returning to the Philippines at this date, and therefore he would not meet the burden of proving it is more likely than not that he would be so persecuted on the basis of his race, religion, nationality, membership in a particular social group, or because of an expressed political opinion or political opinion imputed to him by the persecutors.

The IJ rejected Pagayon's claim for relief under the Convention Against Torture (CAT) for essentially the same reasons.

Pagayon appealed to the Board. In his notice of appeal, he claimed that the IJ (1) "failed to take consideration of the totality of the evidence presented and failed to apply the correct legal standard to the facts and evidence," and (2) "denied the Respondent of a full and fair hearing in violation of due process of law." Pagayon did not file a brief. The Board summarily affirmed the IJ's decision.

Pagayon then filed a petition for review with this Court, and simultaneously filed a "motion to reconsider and remand" with the Board. In the latter, he argued (1) that the evidence presented to the IJ did not establish the nature of his convictions, (2) that the IJ failed to apply the proper factors in his "particularly serious crime" assessment, (3) that the IJ violated due process, and (4) that the IJ did not apply the correct law to his CAT claim. The Board denied the motion on the ground that those "specific contentions" were raised for the

first time on reconsideration. Pagayon thereupon filed a second petition for review, which we consolidated with the first.

## II

Before turning to the merits, we must address the government's argument that Pagayon failed to exhaust his claims before the Board. "A court may review a final order of removal only if . . . the alien has exhausted all administrative remedies available to the alien as of right . . . ." 8 U.S.C. § 1252(d)(1). This requirement "generally bars us, for lack of subject-matter jurisdiction, from reaching the merits of a legal claim not presented in administrative proceedings below." *Barron v. Ashcroft*, 358 F.3d 674, 678 (9th Cir. 2004). If the petitioner does not file a brief before the Board, then we look to the notice of appeal to determine which issues he exhausted. *See Abebe v. Mukasey*, 554 F.3d 1203, 1208 (9th Cir. 2009).

A petitioner must specify which issues he intends to raise on appeal; a "general challenge to the IJ's decision" will not suffice. *Zara v. Ashcroft*, 383 F.3d 927, 930 (9th Cir. 2004). On the other hand, the petitioner is not limited to raising issues in exactly the same terms as they were presented to the Board. *See Vizcarra-Ayala v. Mukasey*, 514 F.3d 870, 873 (9th Cir. 2008). We are particularly careful to give claims raised by *pro se* petitioners their most liberal construction. *See id*. Under these forgiving standards, we are satisfied that Pagayon's notice of appeal gave the Board an adequate opportunity to pass on the arguments he presents here.

## III

"When the BIA summarily affirms the IJ's decision, we review the IJ's decision as the final agency action." *See Zehatye v. Gonzales*, 453 F.3d 1182, 1184 (9th Cir. 2006). Pagayon challenges that decision on three grounds. He argues (1) that the IJ erred in finding him removable, (2) that the IJ

erred in finding him ineligible for withholding of removal, and (3) that the IJ violated his due-process rights.

## A. Removability

Having abandoned his claim of citizenship, Pagayon's challenge to the IJ's removability determination is limited to the findings regarding the nature of his convictions. Whether a particular conviction makes an alien removable is "a legal question subject to de novo review." *Cazarez-Gutierrez v. Ashcroft*, 382 F.3d 905, 909 (9th Cir. 2004).

The IJ found Pagayon removable because (1) his firearm conviction was for an aggravated felony under 8 U.S.C. § 1227(a)(2)(A)(iii), and (2) his drug conviction related to a controlled substance under 8 U.S.C. § 1227(a)(2)(B)(i). Since either finding is sufficient to require removal, we opt to address only the second.[1]

[1] Section 1127(a)(2)(B)(i) "requires the government to prove that the substance underlying an alien's state law conviction for possession is one that is covered by Section 102 of the [federal Controlled Substances Act]." *Ruiz-Vidal v. Gonzales*, 473 F.3d 1072, 1076 (9th Cir. 2007). Because not all substances prohibited by California law are "controlled substances" under federal law, the simple fact of conviction under section 11377(a) of the California Health and Safety Code does not prove that the conviction involved a controlled substance. *See id.* at 1078. Instead, we must look behind the conviction by applying a "modified categorical approach." *See Parrilla v. Gonzales*, 414 F.3d 1038, 1043 (9th Cir. 2005).

---

[1]As a result, we need not address whether, as a consequence of the antique exception to the federal definition of "firearm," *see* 18 U.S.C. § 921(a)(3)(D), the government must prove that a conviction under a state law lacking a similar exception involved a non-antique.

Our inquiry under the modified categorical approach is confined to a "narrow, specified set of documents that are part of the record of conviction." *Tokatly v. Ashcroft*, 371 F.3d 613, 620 (9th Cir. 2004). "These documents include the indictment, the judgment of conviction, the jury instructions, a signed guilty plea, and the transcript from the plea proceedings." *Malilia v. Holder*, 632 F.3d 598, 603 (9th Cir. 2011). Comparable judicial records of the same information—such as minute entries and abstracts of judgment—are also acceptable. *See Shepard v. United States*, 544 U.S. 13, 26 (2005). Limiting our consideration to these documents allows us to determine reliably the nature of a conviction without inviting inappropriate relitigation of the underlying facts. *See Tokatly*, 371 F.3d at 622 ("We are required to determine whether Tokatly has been *convicted* of a crime of domestic violence—not whether he *in fact* committed such a crime." (internal quotation marks omitted)).

**[2]** The abstract of judgment here establishes only that Pagayon was convicted of possessing some drug; it may or may not have been a controlled substance under federal law. The underlying information *charges* him with possession of a controlled substance (methamphetamine), but, as we have explained, a charging document does not, standing alone, demonstrate that the crime charged and the crime of conviction are one and the same. Something else must connect the two, such as a reference to the charging document in the record of conviction. *See United States v. Vidal*, 504 F.3d 1072, 1088 (9th Cir. 2007); *United States v. Velasco-Medina*, 305 F.3d 839, 852 (9th Cir. 2002). Alternatively, a copy of the jury instructions (in the case of a conviction after trial) or of the plea agreement (in the case of a conviction on a guilty plea) will demonstrate whether the conviction was for the crime charged.

In principle, there is no reason why an alien could not admit to the necessary connection between a charging document and a conviction. Yet our cases have been equivocal. In

*Sandoval-Lua v. Gonzales*, 499 F.3d 1121 (9th Cir. 2007), we noted that an IJ had improperly considered an alien's testimony that the conviction at issue was "for delivering eight ounces of methamphetamine from a friend to another person in exchange for $450." *Id.* at 1129 n.7. Just three months later, we upheld a removability finding based on the alien's admission that he had been convicted of solicitation to possess a certain amount of marijuana. *See Barragan-Lopez v. Mukasey*, 508 F.3d 899, 905 (9th Cir. 2007).

**[3]** We reconciled this apparent inconsistency in *Cheuk Fung S-Yong v. Holder*, 600 F.3d 1028 (9th Cir. 2010). There, we addressed the effect of the alien's admission to the accuracy of an "unidentified 'conviction document' " showing that he had been convicted of distributing MDMA, a removable controlled substance offense. *See id.* at 1031, 1035. Because the document was not in the record, we "ha[d] no way to review whether the document established with certainty that Yong's conviction was a controlled substance offense." *Id.* at 1035. We held that "admissions alone" cannot constitute clear, convincing and unequivocal evidence of removability, and distinguished *Barragan-Lopez* on the ground that the IJ in that case had been "presented with reliable documents of conviction *in addition to* the alien's judicial admissions." *Id.* at 1036 (citing *Barragan-Lopez*, 508 F.3d at 905).

Here, the IJ did not rely solely on Pagayon's admission. The abstract of judgment established the crime of conviction, while the information established that the drug charge was for possession of methamphetamine. Pagayon's admission was needed only to confirm that the conviction was for the charged crime.

**[4]** We therefore make explicit what *Cheuk Fung S-Yong* suggests: An IJ may consider an alien's admissions regarding removability if they are corroborated by the "narrow, specified set of documents that are part of the record of conviction," *Tokatly*, 371 F.3d at 620. Absent some claim of

mistake, duress or the like—which Pagayon does not raise—an admission is just as reliable as an explicit reference to the charging document in an abstract of judgment. And since an admission like Pagayon's does no more than establish that the conviction at issue was for the crime charged, it does not invite the IJ to improperly relitigate the criminal case by inquiring into the underlying facts of the crime. *Cf. id.* at 623 (IJ not allowed to consider testimony of victim to establish "domestic" nature of crime of violence); *Huerta-Guevara v. Ashcroft*, 321 F.3d 883, 888 (9th Cir. 2003) ("[E]ven if the facts as represented in Huerta's brief are taken as a true account of what she did, it is not clear that these are the elements to which she pled guilty.").

[5] Coupled with Pagayon's admission, the record of conviction clearly, convincingly and unequivocally shows that Pagayon was convicted of a controlled substance offense.[2] The government met its burden of establishing removability.

## B.   Relief from Removal

Because we have not addressed whether Pagayon's firearm conviction involved a removable "aggravated felony," we cannot, as the IJ did, conclude that Pagayon is automatically ineligible for asylum, *see* 8 U.S.C. § 1158(b)(2), and ineligible for withholding of removal because the conviction was for a "particularly serious crime," *id.* § 1231(b)(3)(B)(ii).[3] Instead, we turn to the IJ's alternative conclusion that Pagayon failed to meet his burden of proving entitlement to withholding.

---

[2]By contrast, the record of the firearm conviction does not, even with Pagayon's admission, show that he was convicted of possessing a non-antique firearm. As noted, we leave for another day whether such proof is required to establish removability based on a conviction under Cal. Penal Code § 12021(a)(1).

[3]Pagayon has abandoned his claim for relief under CAT.

**[6]** "To qualify for withholding of removal, an alien must demonstrate that 'it is more likely than not that he would be subject to persecution on one of the specified [protected] grounds.' " *Al-Harbi v. INS*, 242 F.3d 882, 888 (9th Cir. 2001) (quoting *INS v. Stevic*, 467 U.S. 407, 429-30 (1984)). Factual findings concerning entitlement to withholding are reviewed for substantial evidence, and must be upheld if "supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Zhou v. Gonzales*, 437 F.3d 860, 864-65 (9th Cir. 2006) (citations and internal quotation marks omitted). They may be reversed only if the evidence is "such that a reasonable fact-finder would have been compelled" to reach a contrary result. *Id*. at 865 (citations and internal quotation marks omitted).

**[7]** The record does not compel the conclusion that Pagayon will face persecution in the Philippines for two reasons. First, notwithstanding Pagayon's relocation within the Philippines 15 years ago, he has not demonstrated that he would face reprisals from the NP if he returned now. His sister, for instance, continues to live there unmolested.

**[8]** Second, Pagayon has not conclusively established that the NP would target him on a protected ground. As the IJ recognized, withholding is available only to those who face persecution on account of race, religion, nationality, membership in a particular social group, or an actual or imputed political opinion. *See Sharma v. Holder*, 633 F.3d 865, 869-70 (9th Cir. 2011). Although Pagayon casts his claim as one based on imputed political opinion, his narrative to the IJ described the NP's motive as an attempt to discourage his family from exposing or avenging his father's murder. A personal dispute is not, standing alone, tantamount to persecution based on an imputed political opinion. *See Molina-Morales v. INS*, 237 F.3d 1048, 1051-52 (9th Cir. 2001) (personal disputes not grounds for asylum unless connected to a protected ground).

That Pagayon is not entitled to withholding does not necessarily mean that he cannot satisfy the less stringent "well-

founded fear" standard for asylum. *See INS v. Cardoza-Fonseca*, 480 U.S. 421, 449 (1987) ("[T]o show a 'well-founded fear of persecution,' an alien need not prove that it is more likely than not that he or she will be persecuted in his or her home country."). The IJ did not address Pagayon's asylum claim on the merits, relying instead on the firearm conviction to find him ineligible. We need not remand, however, because asylum, like withholding, protects only those who risk persecution based on a protected ground. *See Sharma*, 633 F.3d at 869. Thus, even if Payagon could show a well-founded fear of reprisals by the NP, he could not, as explained above, establish that the reprisals would be based on an imputed political opinion.

## C.   Due Process

Pagayon argues that the IJ violated his due-process rights by not allowing him time to submit a letter recapitulating his oral testimony, and by refusing to take telephonic testimony from family members.[4] We review this claim de novo. *Ibarra-Flores v. Gonzales*, 439 F.3d 614, 620 (9th Cir. 2006).

Assuming that one or both of the IJ's decisions were error, they do not amount to due-process violations unless they deprived Pagayon of "a full and fair hearing" of his claims. *Zolotukhin v. Gonzales*, 417 F.3d 1073, 1075 (9th Cir. 2005). In other words, Pagayon must show prejudice, "which means that the outcome of the proceeding may have been affected by the alleged violation." *Reyes-Melendez v. INS*, 342 F.3d 1001, 1007 (9th Cir. 2003).

**[9]** Prejudice may be inferred "even absent any allegations as to what the petitioner or his witnesses might have said." *Zolotukhin*, 417 F.3d at 1077 (citing *Colmenar v. INS*, 210

---

[4]He also argues that the IJ was biased against him. Because this claim is offered strictly as a basis for reassignment to a different IJ in case of remand, we do not address it.

F.3d 967, 972 (9th Cir. 2000)). In this case, however, we can find no connection between the additional evidence and the outcome of the proceeding. Since the IJ accepted Pagayon's version of the facts, corroborating evidence was not necessary. And since that version of the facts portrays a personal vendetta against someone intending to expose the NP's misdeeds, Pagayon cannot plausibly claim that the additional evidence would have contradicted his own testimony by suggesting a different motive for his father's murder.

## IV

The government satisfied its burden of proving removability. Pagayon, by contrast, failed to carry his burden of proving that he is entitled to relief from removal, or that the IJ violated his due-process rights. Accordingly, his petitions for review are

DENIED.