# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 01-1608

BESEM SELIMI,

*Petitioner*,

*v.*

IMMIGRATION AND NATURALIZATION SERVICE,

*Respondent.*

Petition for Review of an Order of the
Board of Immigration Appeals
No. A 42 919 715

ARGUED NOVEMBER 26, 2001—DECIDED DECEMBER 4, 2002

Before ROVNER, DIANE P. WOOD, and WILLIAMS, *Circuit Judges.*

ROVNER, *Circuit Judge.* Besem Selimi petitions this court to review an order of the Board of Immigration Appeals (the "Board" or "BIA") finding him excludable for alien smuggling pursuant to 8 U.S.C. § 1182(a)(6)(E)(i) and ineligible for the limited waiver of excludability set forth in 8 U.S.C. § 1182(d)(11). Finding no merit in any of the challenges that Selimi makes to the Board's order, we dismiss his petition for review.

## I.

The United States admitted Selimi, a native and citizen of the former Yugoslavia, to lawful permanent residence in this country in 1991. Selimi lives in Madison, Wisconsin, where he works as a cook and holds a partial ownership interest in a restaurant. In May of 1993, Selimi returned to the former Yugoslav Republic of Macedonia, where his wife, Ajshe, and three daughters (Reshida, Kujtesa, and Vjolka—ages four, three, and one) had continued to live following his emigration to the United States. His family members previously had been granted priority immigration status by the Immigration and Naturalization Service ("INS") but had not yet received visas permitting them to enter the United States. Nonetheless, when Selimi flew back to the United States four days later, his wife and children traveled with him under falsified (photo-substituted) passports. Suzana Kuqo, his cousin, accompanied them, also using a falsified passport. Kuqo's passport listed one of Selimi's children as her own. A.R. 64.

When Selimi, his family, and his cousin debarked from their trans-Atlantic flight at New York's Kennedy Airport, INS officials detained them for questioning and determined that Selimi's wife, children, and cousin had attempted to enter this country illegally. Selimi gave a sworn statement to an INS officer regarding his trip to Macedonia. In that statement, Selimi indicated that he had traveled to Macedonia in order to bring his family members back to the United States, and that he had paid $5,000 in order to obtain the falsified passports. A.R. 322.

Concluding that Selimi had attempted to smuggle undocumented aliens into the United States, the INS charged him with excludability pursuant to section 212 (a)(6)(E) of the Immigration and Nationality Act, 8 U.S.C. § 1182(a)(6)(E). A.R. 392. Selimi moved for a change of venue on this charge from New York to Chicago, which

was closer to home for both Selimi and his attorney, who like Selimi lived in Madison. The INS opposed the motion on the ground that its witnesses (the inspectors who had detained Selimi and taken his sworn statement) were located in New York. A.R. 285-87. An immigration judge denied Selimi's motion, reasoning that because he had not conceded inadmissibility, the New York INS inspectors would have to testify. A.R. 284. Selimi subsequently renewed his change of venue motion, this time conceding that he had violated section 212(a)(6)(E) and was excludable on that basis. A.R. 275; *see also* A.R. 273 (cover letter). He also sought relief under, *inter alia*, section 212(d)(11) of the INA, 8 U.S.C § 1252(d)(11). *See* A.R. 275. In view of his concession, the INS withdrew its opposition to the motion (A.R. 274, *see also* A.R. 283), and the immigration judge granted his motion.

At his initial appearance in Chicago, Selimi, through his counsel, confirmed his concession that he was excludable pursuant to section 212(a)(6). A.R. 43-44. An immigration judge subsequently conducted an evidentiary hearing on Selimi's request for a waiver of excludability. A.R. 48.[1] At that hearing, Selimi offered into evidence a written statement from his wife representing that it was she rather than Selimi who had paid for the falsified passports. A.R. 194-96. Mrs. Selimi averred that she had paid $4,000 to Kuqo's father for her passport and visa, which also included two of their daughters. A.R. 195-96. Kuqo submitted a statement likewise averring that Mrs. Selimi had

---

[1] Selimi alternatively sought relief under sections 208(a) of the INA, 8 U.S.C. § 1158(a) (asylum), and 243(h), 8 U.S.C. §1253(h) (1994) (withholding of deportation). The IJ conducted a separate evidentiary hearing on these requests (A.R. 89) and ultimately denied Selimi relief (A.R. 31, 35-41). The denial of Selimi's requests for asylum and withholding of deportation are not at issue in this appeal.

paid $4,000 for her passport and visa and adding that Kuqo's father had paid $1,000 for Kuqo's passport and visa, which included the Selimis' third daughter. A.R. 197.[2] Selimi himself took the witness stand and testified that his wife had obtained the falsified passports through Kuqo's father "on her own." A. 56-57. Selimi acknowledged that he had been aware of his family's wish to join him in the United States and that he had traveled to Macedonia to bring his family back to the United States with him. A.R. 56, 62. Selimi explained, however, that his wife had led him to believe that she had obtained a legitimate passport and visa entitling her and their children to enter the United States and had asked him to fly to Macedonia in order to accompany them to the U.S.; she was afraid to make the trip by herself. A.R. 56, 62. Only after he arrived in Macedonia did he learn that she had obtained falsified passports and visas for herself and the children. A.R. 56, 62-63. He acceded to his wife's plan to enter the U.S. illegally because he was under "high pressure" from her not to leave her in Macedonia. A.R. 63; *see also* A.R. 59, 75.[3] "I had no other avenue but to go along with the arrangement," he testified. A.R. 75. He therefore accompanied his wife, children, and cousin on the return trip to the United States knowing that they were traveling under false documents. A.R. 63. Selimi denied that he had had anything to do with his cousin's effort to enter this country. A.R. 78. He admitted, however, that his

---

[2] According to Selimi, Kuqo's father had been unable to obtain a passport for Mrs. Selimi that included all three of her children; consequently, the third daughter was added to Kuqo's passport. A.R. 203.

[3] Aside from the continuing turmoil in nearby Bosnia-Herzegovina, security officials, according to Mrs. Selimi, had been visiting their home to search the premises and to check on Selimi's whereabouts. Ar. 57-58.

cousin's father had procured the passports for his wife and children as well as for his cousin. A.R. 57. He also admitted that he knew that his cousin's passport falsely identified one of his own children as her child and that he had paid in part for that child's passport. A.R. 78; *see also* A.R. 203. Selimi suggested that his prior statement to the INS inspector in New York, which indicated that he rather than his wife had paid for the false documentation, was inaccurate, pointing out that the INS inspector had prepared the statement and that he had not had the benefit of an interpreter during the interview that culminated in that statement. A.R. 75-78.

In the course of the evidentiary hearing the IJ suggested that it "could be argued" that Selimi had done nothing to aid the illegal entry of his wife, children, and cousin simply by traveling with them and that therefore he was not excludable for alien smuggling under section 212(a)(6)(E) of the INA notwithstanding his concession to that effect. A.R. 65. On several occasions, the IJ asked the INS's counsel to make a proffer of the evidence that the INS might present in order to establish Selimi's excludability. *E.g.*, A.R. 66, 72. Counsel repeatedly demurred, however, noting that Selimi had conceded the issue of his excludability. *E.g.*, A.R. 65-67, 72-73. Counsel also announced that if the IJ intended to look behind that concession or to allow Selimi to withdraw it, the INS would seek to have the case returned to New York so that the inspectors who interviewed Selimi and his family could testify. A.R. 65-66, 70-73. The INS's counsel rejected the IJ's suggestion that the officers could testify by telephone. A.R. 66. In the end, Selimi did not seek leave to withdraw his concession of excludability.

After hearing the evidence, the IJ found Selimi statutorily ineligible for a waiver of his excludability under section 212(d)(11) of the INA. A.R. 35. The judge pointed out that eligibility for the waiver is limited to an alien who has

knowingly aided, encouraged, or abetted his own spouse, parent, or child to enter the United States illegally. *Id.* Selimi, the IJ found, was involved not only with the attempted entry of his wife and children into this country, but with that of his cousin as well. *Id.*

> The facts reveal that the applicant traveled to the United States not only with his wife and children but also his cousin. The applicant was well aware of the fact that his cousin's false passport listed his own child as her child. The applicant was seeking to have his child admitted to the United States with his cousin under a false passport. I find on these facts that under the statute, the applicant does not qualify for a waiver of his excludability inasmuch as he also encouraged, induced, or aided in his cousin's attempted entry.

*Id.*

Selimi appealed the IJ's adverse determination to the BIA, but the Board dismissed the appeal. A.R. 2. The Board rejected Selimi's threshold contention that the New York IJ had coerced him into conceding his excludability by denying his motion for a change of venue from New York to Chicago so long as he contested his excludability. In the Board's view, it was reasonable for the IJ to think that a hearing on the question of excludability should take place at the point of Selimi's entrance into the United States, where government witnesses to his entry would be available to testify. A.R. 2-3. The Board also rejected Selimi's argument that the Chicago IJ had erred in relying on Selimi's concession of excludability and by not allowing him to withdraw that concession. The BIA noted that although the IJ had "inexplicably offered suggestions as to how the Judge thought that the applicant might have argued that he is not excludable," at no time during the evidentiary hearing had Selimi attempted to

retract his concession. A.R. 3. Having conceded before the IJ that he was excludable as charged, Selimi could not turn around and argue on appeal that he was not excludable, the BIA reasoned. A.R. 3. Finally, the BIA sustained the IJ's determination that Selimi was not eligible for a section 212(d)(11) waiver of excludability. The Board noted that Selimi admitted that he had traveled to Macedonia in 1993 in response to his wife's entreaties that he bring her to the United States, that he had subsequently returned to the United States in the company of his cousin as well as his wife and children, and that he knew his cousin's falsified passport listed one of his children as her own. In view of that evidence, the Board concluded, the IJ correctly found that Selimi had attempted to assist his cousin's unlawful entry into the United States and that he was therefore ineligible for relief under section 212(d)(11). A.R. 3.

## II.

On review of the BIA's order, Selimi makes four principal arguments. First, Selimi contends that as a lawful permanent resident of the United States, he should have been placed in deportation rather than exclusion proceedings. He next contends that he was deprived of due process because the government never established by clear, convincing, and unequivocal evidence that he was excludable. He goes on to suggest that he was coerced into conceding his excludability by the INS. Finally, he contends that the Board improperly denied him a waiver of excludability.

Selimi first suggests that the INS should have placed him in deportation rather than exclusion proceedings. Prior to the Immigrant Reform and Responsibility Act of 1996, there was a long-recognized distinction between exclusion

proceedings, which concerned aliens who were seeking entry into the United States, and deportation proceedings, which dealt with aliens already present in this country. *See Landon v. Plasencia*, 459 U.S. 21, 25, 103 S. Ct. 321, 325 (1982). Aliens in deportation proceedings enjoyed a variety of procedural protections that those in exclusion proceedings did not. *Id.* at 25-27, 103 S. Ct. at 325-26.

The INS placed Selimi in exclusion proceedings because although he had been admitted to lawful permanent residency in the United States, he had left the country for purposes of the visit to Macedonia and was seeking to re-enter the United States when he was detained for apparent alien-smuggling. As applicable to this case, the INA defines an "entry" as

> . . . any coming of an alien into the United States, from a foreign port or place or from an outlying possession, whether voluntarily or otherwise, except that an alien having a lawful permanent residence in the United States shall not be regarded as making an entry into the United States for the purposes of the immigration laws if the alien proves to the satisfaction of the Attorney General that his departure . . . was not intended or reasonably to be expected by him or his presence in a foreign port or place or in an outlying possession was not voluntary . . . .

8 U.S.C. § 1101(a)(13) (1994).

In *Rosenberg v. Fleuti*, 374 U.S. 449, 462, 83 S. Ct. 1804, 1812 (1963), the Supreme Court concluded that an alien's "innocent, casual and brief" absence from this country did not necessarily qualify as a meaningful departure such that his return to the United States would constitute an "entry" for purposes of the statute. Selimi likens his four-day trip to Macedonia to the petitioner's brief trip across the border in *Fleuti*. However, *Fleuti* itself recog-

nized that when a resident alien leaves the United States for a reason that is inconsistent with the policies reflected in this country's immigration laws, the "interruption of residence thereby occurring would properly be regarded as meaningful." *Id.* at 462, 83 S. Ct. at 1812.

This court's opinions in *Leal-Rodriguez v. INS*, 990 F.2d 939, 944 (7th Cir. 1993), and *Lozano-Giron v. INS*, 506 F.2d 1073, 1078-79 (7th Cir. 1974), make clear that even if a resident alien leaves the United States for an innocent reason, the purpose of his trip may nonetheless be deemed improper (and thus meaningfully interruptive of his permanent residence in this country) when before returning to the United States he forms an intent to commit an illegal act. Thus, we may accept Selimi's contention that when he left the United States for Macedonia, he believed that his wife had lawfully obtained the requisite documentation to enter this country and that he had no intent to aid or encourage his family to enter the United States illegally. Yet, upon his arrival in Macedonia, Selimi learned the truth about the passports and visas his wife and cousin had obtained and accompanied them back to the United States knowing that they were attempting to enter the country illegally. If, as the IJ and the BIA determined, Selimi intended to encourage or facilitate their attempt in some way, then the BIA could reasonably conclude that the purpose of Selimi's trip abroad was improper even if his culpable intent was not formed until after he had already departed the United States. *Leal-Rodriguez*, 990 F.2d at 944; *Lozano-Giron*, 506 F.2d at 1078-79. Selimi's departure from the United States consequently was not "innocent." The INS correctly treated the interruption in his residence as meaningful and, upon Selimi's attempted entry into the United States with his family, properly placed him in exclusion rather than deportation proceedings.

Selimi argues that he was deprived of due process because the INS failed to prove that he was excludable under section 212(a)(6)(E) by clear, convincing, and unequivocal evidence, including in particular evidence that he acted with the requisite knowledge and intent in accompanying his wife, children, and cousin back to the United States. But Selimi relieved the INS of that burden when, through his attorney, he conceded his excludability. Concessions of this sort, often motivated by tactical and pragmatic considerations, are routinely made in immigration proceedings. *See*, *e.g.*, *Reyes-Hernandez v. INS*, 89 F.3d 490, 492 (7th Cir. 1996). Selimi suggests that because his attorney simply conceded excludability generally, without admitting any facts that would establish his excludability, the INS remained obligated to prove, and the Immigration Judge was still required to find, that he was excludable. But the concession that Selimi's attorney made was in the nature of a judicial admission, and such an admission has the effect of withdrawing an issue from controversy. *See*, *e.g.*, *Solon v. Gary Community School Corp.*, 180 F.3d 844, 858 (7th Cir. 1999). Having formally conceded that he was excludable, Selimi may not now contend that the INS's proof of excludability was insufficient. *Cf. Arreola-Arellano v. INS*, 223 F.3d 653, 656 (7th Cir. 2000) ("we need not speculate as to how the INS could have proven deportability, because [petitioner] conceded that he was deportable at his deportation hearing").

Selimi contends that the INS coerced him into making this concession, but we find no merit in this contention. Selimi points out that the INS successfully opposed his initial request to transfer the proceedings from New York to Chicago on the ground that resolution of his excludability would require the testimony of officers stationed in New York; only after Selimi conceded his excludability was his renewed transfer motion granted. He goes on to

note that when the IJ in Chicago began to look behind Selimi's concession and raised the possibility that he might allow Selimi to withdraw it (*see* A.R. 72-73), the INS's counsel suggested that if this came to pass the INS would seek to have the case returned to New York in order to obtain the testimony of the inspecting agents familiar with the circumstances of Selimi's return to the United States. A.R. 65-66, 70-73. The attorney also refused to agree to have the agents testify by telephone instead. A.R. 66. In this way, Selimi argues, the INS wrested the concession of excludability from him and prevented him from withdrawing it.

This vastly overdramatizes the record, however. Given that its witnesses on the subject of Selimi's excludability were in New York, the INS had a plausible basis to argue that any hearing on that subject should take place in New York, and the IJ in New York expressly agreed with that argument when he denied Selimi's initial request for change of venue. A.R. 284. Selimi and his attorney then made a calculated decision to concede his excludability, which paved the way for transfer of the case to Chicago, and later not to request leave from the Chicago IJ to withdraw that concession. The INS's avowed intent to ask that the case be returned to New York if Selimi withdrew his concession does not strike us as a particularly lethal threat. Even assuming that the Chicago IJ was likely to grant such a request, the record gives us no reason to believe that the prospect of litigating his excludability in New York rather than Chicago was so onerous as to render involuntary his decision not to contest his excludability.

Finally, Selimi contends that the Board improperly denied his request for a waiver of excludability pursuant to section 212(d)(11). That provision grants the Attorney General discretion to waive an alien who is excludable for alien smuggling pursuant to section 212(a)(6)(E)(i)

so long as "the alien has encouraged, induced, assisted, abetted, or aided *only* . . . the alien's spouse, parent, son, or daughter (and no other individual) to enter the United States in violation of law." 8 U.S.C. § 1182(d)(11) (emphasis added). As we noted above, both the IJ and the Board concluded that Selimi was not qualified for the waiver because he had aided the attempted entry of his cousin as well as his wife and children. Selimi suggests that because his primary objective was to assist the entry of his wife and children, he should remain eligible for the waiver notwithstanding the fact that his cousin attempted to gain entry into the United States along with his immediate family. To the extent that the IJ and the Board deemed whatever incidental aid and assistance he may have provided to his cousin disqualifying, they committed legal error, in Selimi's view, by interpreting section 212(d)(11) too rigidly.

However, the plain terms of section 212(d)(11) render an alien ineligible for a waiver of excludability if he has aided someone other than his spouse, parent, son, or daughter. Indeed, the statute's use of the limiting term "only," which it reinforces with the parenthetical "and no other individual," leaves no doubt that the alien cannot have aided anyone but a parent, spouse, or child in order to be eligible for the waiver. Furthermore, the statute draws no distinction between an alien's principal and lesser objectives in helping a group of individuals to enter the country, nor does it differentiate among degrees of assistance. Here, the IJ specifically found that Selimi had encouraged and assisted his cousin's attempted entry along with that of his wife and children, and the Board sustained that finding. A.R. 3, 35. Our review of that factual finding is deferential: we will uphold the BIA's determination so long as it has the support of "'reasonable, substantial, and probative evidence on the record considered as a whole.'" *INS v. Elias-Zacarias*, 502 U.S.

478, 481, 112 S. Ct. 812, 815 (1992), quoting 8 U.S.C. § 1105a(a)(4) (repealed). In view of the evidence, which reveals not only that Suzana Kuqo traveled with Selimi and his family but did so using a passport that listed one of Selimi's daughters as her own child, the Board's finding was amply justified and we are not at liberty to disturb it.

## III.

For all of these reasons, we dismiss Selimi's petition for review of the Board's order.

A true Copy:

      Teste:

_____

*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*
