**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

BARBARITO PEREZ-MEJIA,
               *Petitioner,*

    v.

ERIC H. HOLDER JR., Attorney
General,
              *Respondent.*

No. 07-70118

Agency No.
A073-845-546

ORDER
GRANTING
LEAVE TO FILE
AMICUS BRIEF,
AMENDING
OPINION AND
DENYING
PETITIONS FOR
REHEARING AND
REHEARING EN
BANC AND
AMENDED
OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
February 11, 2011—Pasadena, California

Filed April 21, 2011
Amended Opinion Filed November 23, 2011

Before: A. Wallace Tashima and Raymond C. Fisher,
Circuit Judges, and Mark L. Wolf, District Judge.*

Opinion by Chief Judge Wolf

---

*The Honorable Mark L. Wolf, Chief United States District Judge for
the District of Massachusetts, sitting by designation.

**COUNSEL**

Raul Gomez and Araceli S. Perez-Brizo (argued), Law Office of Raul Gomez, Los Angeles, California, for the petitioner.

James E. Grimes, United States Department of Justice, Civil Division, Washington, D.C., for the respondent.

**ORDER**

The motion for leave to file an amicus brief in support of the petitioner's petition for rehearing, filed by Northwest Immigrant Rights Project on August 1, 2011, is **GRANTED**.

The opinion filed April 21, 2011, and appearing at 641 F.3d 1143 (9th Cir. 2011), is **AMENDED**. An amended opinion will be filed concurrently with this order.

With this action, the panel has voted to deny the petition for panel rehearing. Judge Fisher has voted to deny the petition for rehearing en banc and Judges Tashima and Wolf have so recommended.

The full court has been advised of the petition for rehearing en banc and no judge has requested a vote on whether to rehear the matter en banc. Fed. R. App. P. 35.

The petition for panel rehearing and the petition for rehearing en banc are **DENIED**.

No further petitions for rehearing will be accepted.

---

## OPINION

WOLF, Chief District Judge:

Petitioner Barbarito Perez-Mejia petitions for review of a decision of the Board of Immigration Appeals ("BIA") dismissing an appeal from an order of removal to Mexico. At the outset of the removal proceedings before an Immigration Judge ("IJ"), Perez-Mejia's counsel admitted that Perez-Mejia had been convicted in 1997 of possession of cocaine for sale in violation of California Health and Safety Code section 11351 and conceded that he was removable as a result. On that basis, the BIA found that Perez-Mejia was removable under 8 U.S.C. § 1182(a)(2)(A)(i)(II) and that he was ineligible for a waiver of inadmissibility pursuant to 8 U.S.C. § 1182(h).

Perez-Mejia argues that the government failed to meet its burden of proving that he was removable because the BIA and

the IJ were not permitted to rely on his counsel's admissions. He also asserts that a criminal docket from his 1997 conviction that was introduced into evidence by the government was insufficient to establish that he was removable because the document did not indicate what substance he possessed for sale. Additionally, Perez-Mejia contends that the government is estopped from removing him on the basis of his 1997 conviction because it knew about the conviction when it granted him Legal Permanent Resident ("LPR") status in 2003. Finally, he argues that he is eligible for a waiver of inadmissibility because his 1997 conviction predated his admission as an LPR in 2003.

For the reasons stated below, the petition is being denied.

I.   FACTUAL AND PROCEDURAL BACKGROUND

At the time of the proceedings before the IJ, Perez-Mejia was a thirty-six-year-old native and citizen of Mexico. He was married to an United States citizen, with whom he had two children. In 1997, Perez-Mejia was convicted of possessing a narcotic for sale under California Health and Safety Code section 11351. Sometime later, he applied for adjustment of status to become an LPR. During his adjustment interview with the Department of Homeland Security ("DHS"), Perez-Mejia disclosed his 1997 conviction. Despite the fact that his conviction should have rendered Perez-Mejia inadmissible, he was granted LPR status in 2003.

In 2004, Perez-Mejia departed the United States. When he returned, Perez-Mejia applied for admission into the United States as a returning LPR at the Los Angeles International Airport. However, an immigration officer noted Perez-Mejia's 1997 conviction and initiated removal proceedings against him.

On December 10, 2004, Perez-Mejia was served with a notice to appear ("NTA"). The fourth allegation in the NTA

asserted that he was "convicted in the Superior Court of Los Angeles, County of Los Angeles, State of California, for the offense of, Possession for Sale of a Controlled Substance, to wit: Cocaine, in violation of Section 11351 of the California Health and Safety Code, a Felony."[1] The NTA charged that Perez-Mejia was removable pursuant to 8 U.S.C. § 1182(a)(2)(A)(i)(II) as an alien who was convicted of a drug offense involving a controlled substance listed in § 102 of the Controlled Substances Act, 21 U.S.C. § 802.

Removal proceedings commenced before the IJ on January 12, 2005. However, the proceedings were continued after Perez-Mejia's counsel informed the IJ that he intended to collaterally attack Perez-Mejia's state court conviction. When the proceedings resumed on May 3, 2005, the government provided the IJ with a copy of the criminal docket from Perez-Mejia's 1997 criminal case. The docket indicated that Perez-Mejia was convicted of "POSS NARC CNTRL SUBST FOR SALE" in violation of California Health and Safety Code section 11351, but did not identify the controlled substance. Perez-Mejia stated that he was not ready to address the allegations in the NTA and the proceedings were again continued in order to allow Perez-Mejia to pursue his collateral attack on his 1997 conviction. Perez-Mejia's counsel told the IJ that he was attacking the conviction on the basis that Perez-Mejia possessed a controlled substance for personal use, rather than for sale.

When the removal proceedings resumed on May 12, 2005, Perez-Mejia was again represented by counsel.[2] In a colloquy

---

[1]The NTA contained three other allegations. It alleged that Perez-Mejia was not a citizen or national of the United States; that Perez-Mejia was a native and citizen of Mexico; and that Perez-Mejia applied for admission into the United States at the Los Angeles International Airport on October 18, 2004, as a returning alien.

[2]Perez-Mejia is represented by different counsel in the current proceedings.

with the IJ, Perez-Mejia stated that his attorney was authorized to speak on his behalf. The following exchange then took place between the IJ and Perez-Mejia's counsel:

> The Court: Counsel, ready to go forward *with pleadings*?
>
> Petitioner's Counsel: Yes, Your Honor. . . .
>
> The Court: Concede he was properly served with the NTA?
>
> Petitioner's Counsel: Yes, Your Honor.
>
> The Court: Have you explained the nature of these proceedings to him?
>
> Petitioner's Counsel: Yes, I have.
>
> The Court: Waive formal reading of the NTA?
>
> Petitioner's Counsel: Yes, Your Honor.
>
> The Court: On behalf of your client, how *do you pleads [sic] to the four allegations and the one charge of removability*?
>
> Petitioner's Counsel: *We concede the allegations, Your Honor.*
>
> The Court: I'm sorry, *do you admit allegations 1 through 4*?
>
> Petitioner's Counsel: *Yes, Your Honor.*
>
> The Court: And do you concede removability?
>
> Petitioner's Counsel: Yes, Your Honor.

The admission to allegation four in the NTA was an admission that Perez-Mejia had been convicted in 1997 of possessing cocaine with intent to sell it in violation of California law.

After these admissions and the concession of removability, the IJ noted that he had been given a copy of the criminal docket from Perez-Mejia's 1997 criminal conviction. The IJ asked Perez-Mejia's counsel if "that's why you conceded or admitted . . . allegation 4" of the NTA, concerning his 1997 conviction. Perez-Mejia's counsel responded affirmatively. The IJ next inquired whether Perez-Mejia wanted to designate a country to which to be deported and Perez-Mejia's counsel selected Mexico. The IJ then asked what relief Perez-Mejia was seeking. Perez-Mejia's counsel stated that he planned to apply for a waiver of inadmissibility pursuant to 8 U.S.C. § 1182(h), but that he needed another continuance to complete the collateral attack on Perez-Mejia's state court conviction. Another continuance was granted.

The final hearing before the IJ was held on July 8, 2005. The IJ stated that Perez-Mejia had "admitted all allegations" and "conceded removability." Perez-Mejia's counsel then agreed that he "want[ed] to go to the relief phase of the case" to address Perez-Mejia's application for a waiver of inadmissibility under 8 U.S.C. § 1182(h) on the ground that he was married to an United States citizen. The government argued that Perez-Mejia was not eligible for a § 1182(h) waiver because, in the context of a drug conviction, such waivers are available only where the conviction is for a "single offense of simple possession of 30 grams or less of marijuana." 8 U.S.C. § 1182(h). Perez-Mejia's counsel stated that he had no argument in response. The IJ stated that he agreed with the government.

The IJ then considered whether the government was estopped from removing Perez-Mejia on the basis of a conviction of which it was aware when Perez-Mejia applied for LPR status. The IJ expressed the view that Perez-Mejia had benefitted

from a mistake by DHS and, therefore, that the government was not estopped from declaring Perez-Mejia to be inadmissible. Perez-Mejia's counsel did not offer any evidence or argument to refute this conclusion.

Finally, the IJ considered Perez-Mejia's application for voluntary departure. He concluded that Perez-Mejia was not eligible for such relief because his conviction qualified as an aggravated felony, as defined in 8 U.S.C. § 1101(a)(43)(B).

In his final decision, the IJ stated that Perez-Mejia "admitted all allegations" and that "[b]ased on [Perez-Mejia's] admissions . . . removability has been established by clear, convincing and unequivocal evidence." The IJ also stated that Perez-Mejia "conceded removability" and, therefore, removability was "not an issue in this case." *Id.* The IJ then noted that the government had submitted a criminal record that showed Perez-Mejia had been convicted of possession for sale of a narcotic substance in violation of California Health and Safety Code section 11351.

When discussing Perez-Mejia's application for a § 1182(h) waiver, the IJ departed from the rationale on which he relied at the July 8, 2011 hearing. Instead of concluding that Perez-Mejia was ineligible for a waiver because he was not convicted of simple possession of less than thirty grams of marijuana, the IJ stated that Perez-Mejia's ineligibility turned on the fact that he was convicted of an aggravated felony. The reason that the IJ altered the rationale for his decision is not explained. The IJ also held that the government was not estopped from relying on Perez-Mejia's 1997 conviction because Perez-Mejia benefitted from a mistake made by DHS when it considered his application for LPR status, and was not prejudiced by that error. Finally, the IJ concluded that Perez-Mejia was not eligible for voluntary departure because he had been convicted of an aggravated felony.

Perez-Mejia timely appealed to the BIA. In his brief, Perez-Mejia argued that the government was estopped from relying

on his 1997 conviction as a basis for removal and that the IJ erred in finding Perez-Mejia ineligible for a § 1182(h) waiver. Perez-Mejia argued, based on the text of the statute, that an LPR is only ineligible for a § 1182(h) waiver if he commits an aggravated felony *after* he is admitted.

The BIA adopted the IJ's decision and added its own analysis. It first found that Perez-Mejia was removable "in light of the record of conviction and, more particularly, since [Perez-Mejia] conceded the charge." Next, the BIA rejected Perez-Mejia's estoppel argument "for several reasons." The BIA noted that Perez-Mejia could not meet his burden of establishing affirmative misconduct beyond mere negligence, as required by *Watkins v. U.S. Army*, 875 F.2d 699, 707 (9th Cir. 1989) (en banc). With regard to Perez-Mejia's argument that the IJ erred in finding him ineligible for a § 1182(h) waiver, the BIA concluded that Perez-Mejia was ineligible for a waiver because "his offense was a violation of a state controlled substance law."**³**

Following the BIA's decision, Perez-Mejia timely filed this petition for review.

## II. DISCUSSION

Perez-Mejia presents three arguments on appeal. First, he contends that the government did not meet its burden of proving that he was removable because an alien's admissions alone cannot establish removability and because the criminal docket from his 1997 conviction was insufficient to establish that he possessed for sale a controlled substance that renders

---

**³**The BIA also concluded that Perez-Mejia was ineligible for an adjustment of status in 2003 under 8 U.S.C. § 1229b(a)(3) because he had committed an aggravated felony. As Perez-Mejia notes in his brief, that provision applies to cancellation of removal, for which Perez-Mejia never applied. On appeal, Perez-Mejia does not claim that this error provides any basis for relief.

him removable. Second, Perez-Mejia argues that the government is estopped from removing him on the basis of a conviction about which it knew when it granted him LPR status in 2003. Finally, Perez-Mejia asserts that he is eligible for a § 1182(h) waiver because his conviction occurred before he was granted LPR status.

These are questions of law over which we have jurisdiction, *see* 8 U.S.C. § 1252(a)(2)(D), and which we review de novo. *Hamazaspyan v. Holder*, 590 F.3d 744, 747 (9th Cir. 2009); *see Shin v. Mukasey*, 547 F.3d 1019, 1023-24 (9th Cir. 2008) (jurisdiction to consider effect of alien's admissions on removability and merits of estoppel claim where alleged misconduct by government employee occurred prior to decision of Attorney General to initiate removal proceedings).[4] Where, as here, the BIA conducts its own review rather than adopting the IJ's decision, we review the BIA's decision "except to the extent that the IJ's opinion is expressly adopted." *Hosseini v. Gonzales*, 471 F.3d 953, 957 (9th Cir. 2006) (internal quotation marks omitted).

---

[4]Perez-Mejia did not argue in his brief to the BIA, as he does now, that the government failed to meet its burden of proving that he was removable. Rather, he challenged the IJ's decision on the grounds that the government was estopped from removing him and that he qualified for a waiver of removability. Ordinarily, we are barred, "for lack of subject-matter jurisdiction, from reaching the merits of a legal claim not presented in administrative proceedings below." *Barron v. Ashcroft*, 358 F.3d 674, 678 (9th Cir. 2004). However, the BIA addressed the removability issue in its decision and concluded that Perez-Mejia was removable "for a controlled substance violation, in light of the record of conviction and, more particularly, since the [Perez-Mejia] conceded the charge." "[O]ur precedent is quite clear that claims addressed on the merits by the BIA are exhausted." *Vizcarra-Ayala v. Mukasey*, 514 F.3d 870, 874 (9th Cir. 2008). "The BIA therefore had — and took advantage of — the opportunity to consider" the merits of Perez-Mejia's argument that the government did not meet its burden of proof because reliance on his admissions and concession of removability was improper. *Socop-Gonzalez v. INS*, 272 F.3d 1176, 1186 (9th Cir. 2001) (en banc). Therefore, we conclude that the government has properly conceded that we have jurisdiction over this claim.

A.   *Removability*

As indicated earlier, Perez-Mejia claims that the government failed to meet its burden of proving that he was removable. He argues that the statute under which he was convicted, California Health and Safety Code section 11351, criminalizes possession for sale of a controlled substance, acetylfentanyl, that is not a substance that triggers removal. As a result, Perez-Mejia contends that his conviction requires the application of the "modified categorical approach," a procedure that limits the information that can be considered to determine whether the conduct that led to an alien's conviction amounted to a removable offense. *See S-Yong v. Holder*, 600 F.3d 1028, 1034 (9th Cir. 2010) ("We have previously found that California law regulates the possession and sale of many substances that are not regulated by the [federal Controlled Substances Act]"); *Ruiz-Vidal v. Gonzales*, 473 F.3d 1072, 1077-78 (9th Cir. 2007) (to establish removability, the government must prove that the controlled substance at issue "is not only listed under California law, but also contained in the federal schedules of the [federal Controlled Substances Act]."). When the modified categorical approach must be employed, an alien's factual admissions may not be used as evidence to establish that he is removable, unless those admissions are included in the "narrow, specified set of documents that are part of the record of conviction," such as a plea agreement. *See S-Yong*, 600 F.3d at 1035-36; *Tokatly v. Ashcroft*, 371 F.3d 613, 623-24 (9th Cir. 2004); *Huerta-Guevara v. Ashcroft*, 321 F.3d 883, 888 (9th Cir. 2003). Accordingly, Perez-Mejia argues, his admissions to the factual allegations in the NTA and his concession of removability were not sufficient to establish his removability.

**[1]** However, the rule against relying on an alien's admissions does not apply universally. In *Barragan-Lopez v. Mukasey*, we held that an alien's admissions to "each factual allegation" against him "constitute[d] clear, convincing, and unequivocal evidence" that satisfied the government's burden

of proof. 508 F.3d 899, 905 (9th Cir. 2007). Similarly, in *Shin*, we held that "where the alien concedes removability, 'the government's burden in this regard is satisfied.' " 547 F.3d at 1024 (quoting *Estrada v. INS*, 775 F.2d 1018, 1020 (9th Cir. 1985)). The instant case presents an opportunity to clarify when an alien's admissions may be considered and render him removable.

As explained below, admissions by an alien to facts alleged in an NTA, and concessions of removability, made in the 8 C.F.R. § 1240.10(c) "pleading stage" of removal proceedings may be relied on by an IJ. *See Hoodho v. Holder*, 558 F.3d 184, 190-92 (2d Cir. 2009); *Roman v. Mukasey*, 553 F.3d 184, 186-87 (2d Cir. 2009) (per curiam). However, if material issues remain in dispute, or the IJ is not satisfied that the alien's admissions and concession are sufficient to resolve all issues, the removal proceeding enters the 8 C.F.R. § 1240.10(d) "evidentiary stage." At the § 1240.10(d) stage, if the modified categorical approach is applicable, the evidence that the IJ may consider in deciding whether the alien's prior conviction renders him removable is limited to certain documents. *See S-Yong*, 600 F.3d at 1035; *Tokatly*, 371 F.3d at 620-23. Under this modified categorical approach, any admissions and other statements made by the alien during the proceedings after the § 1240.10(c) pleading stage may not be considered. *See S-Yong*, 600 F.3d at 1035; *Tokatly*, 371 F.3d at 620-23; *Huerta-Guevara*, 321 F.3d at 887-88.

More specifically, removal proceedings are conducted pursuant to a regulation, 8 C.F.R. § 1240.10.[5] After the IJ advises an alien of certain rights and places him under oath, the alien is required "to plead to the notice to appear by stating whether he or she admits or denies the factual allegations and his or

---

[5]Neither party cited the regulation in its initial briefing. It is, however, evident that the IJ used it as the framework for Perez-Mejia's removal proceeding, and the parties have addressed the regulation in their briefing on Perez-Mejia's petition for rehearing.

her removability under the charges contained therein." 8 C.F.R. § 1240.10(c).[6] If the alien admits the allegations and removability, "and the immigration judge is satisfied that no issues of law or fact remain, the immigration judge may determine that removability as charged has been established by the admissions of the respondent." *Id.* If removability is not determined during this § 1240.10(c) pleading stage, the removal hearing enters an evidentiary stage during which the IJ receives admissible evidence on any issue not resolved to his satisfaction at the pleading stage. *Id.* § 1240.10(d).[7]

---

[6]In full, 8 C.F.R. § 1240.10(c) provides:

Pleading by respondent. The immigration judge shall require the respondent to plead to the notice to appear by stating whether he or she admits or denies the factual allegations and his or her removability under the charges contained therein. If the respondent admits the factual allegations and admits his or her removability under the charges and the immigration judge is satisfied that no issues of law or fact remain, the immigration judge may determine that removability as charged has been established by the admissions of the respondent. The immigration judge shall not accept an admission of removability from an unrepresented respondent who is incompetent or under the age of 18 and is not accompanied by an attorney or legal representative, a near relative, legal guardian, or friend; nor from an officer of an institution in which a respondent is an inmate or patient. When, pursuant to this paragraph, the immigration judge does not accept an admission of removability, he or she shall direct a hearing on the issues.

[7]In full, 8 C.F.R. § 1240.10(d) provides:

Issues of removability. When removability is not determined under the provisions of paragraph (c) of this section, the immigration judge shall request the assignment of an Service counsel, and shall receive evidence as to any unresolved issues, except that no further evidence need be received as to any facts admitted during the pleading. The alien shall provide a court certified copy of a Judicial Recommendation Against Deportation (JRAD) to the immigration judge when such recommendation will be the basis of denying any charge(s) brought by the Service in the proceedings against the alien. No JRAD is effective against a charge of deportability under former section 241(a)(11) of the Act or if the JRAD was granted on or after November 29, 1990.

The import of the regulation has been recognized by the Second Circuit. *See Hoodho*, 558 F.3d at 190-92; *Roman*, 553 F.3d at 186-87. In essence, if the IJ is satisfied by the alien's admissions and concession of removability during the pleading stage, the relevant issues are resolved and the proceedings do not enter the evidentiary stage in which disputed questions of removability are decided based on admissible evidence.

In *Hoodho*, counsel for an alien "conceded the truth of the factual allegations [in the NTA and] conceded that he [was] removable as charged." 558 F.3d at 188 (some alterations original). Despite these concessions, the alien argued on appeal that he was not removable. *Id.* The BIA rejected the alien's appeal on the basis that he was bound by his attorney's concessions. *Id.* The Second Circuit agreed that the alien was bound by his attorney's statements where the record did not "plainly contradict the concession." *Id.* at 187. The court noted that "the acceptance by an IJ of a plausible concession of removability is an unremarkable feature of removal proceedings." *Id.* It stated that "[a] petitioner cannot disavow that concession because, in hindsight, it might have been preferable for him to have contested removability, rather than to have conceded it." *Id.* The Second Circuit held that admissions made by an alien's counsel during the pleading stage may be accepted "so long as the IJ 'is satisfied that no issues of law or fact remain.' " *Id.* at 190 (quoting 8 C.F.R. § 1240.10(c)).**8**

The Second Circuit also rejected the alien's argument that the IJ was required to inspect the alien's conviction record to confirm that there was a factual basis for his admissions. *Id.* at 191-92. In response to the alien's argument that the IJ was

---

**8**The Second Circuit explained that the IJ is not required to accept a concession of removability if there is cause to believe that the concession is erroneous. *Hoodho*, 558 F.3d at 192 n.7. However, it added that a concession alone, absent any corroborating evidence, may be sufficient. *Id.* With regard to the case before it, the court noted that alien's concession was "not plainly contradicted by record evidence." *Id.* at 192.

required to apply the modified categorical approach to his prior conviction, the Second Circuit held:

> The IJ did not have occasion to apply the modified categorical approach to [the alien's] conviction . . . because [the alien] conceded removability . . . . In so doing, [the alien] did not press the government to develop the record in support of an inquiry along the lines specified by the modified categorical approach, nor did [the alien] request that the IJ make such a determination. Indeed, his concession obviated the need for such efforts on the part of the government and the IJ.

*Id.* at 190 (citing *Selimi v. INS*, 312 F.3d 854, 860 (7th Cir. 2002)).

**[2]** In another case decided shortly before *Hoodho*, the Second Circuit addressed facts comparable to those in this case and held that the IJ was permitted to rely on counsel's admissions and concession made during the pleading stage. In *Roman*, an alien with LPR status applied for admission to the United States at an airport. *See* 553 F.3d at 185-86. Removal proceedings were commenced against him because he had been convicted of a New York State drug crime. *Id.* At his initial removal hearing, the alien's counsel admitted the factual allegations in the NTA and conceded that the alien was removable. *Id.* at 186. He then obtained several continuances to afford time to collaterally attack the alien's state court conviction. *Id.* Considering the question of whether "the IJ was prohibited from relying on [the alien's] own admissions (through his attorney) as the sole evidence establishing removability based on a prior conviction," the Second Circuit held that the IJ's actions "were explicitly authorized by 8 C.F.R. § 1240.10(c)." *Id.* at 186. The court went on to note that the alien did "not allege that the admissions were inaccurate or that the lawyer representing him was ineffective." *Id.*

at 187. Therefore, the admissions made by the attorney were deemed to be "binding on his alien client." *Id.*

Although decisions in this Circuit do not reference § 1240.10, our jurisprudence concerning the effect of an alien's admissions in removal proceedings is consistent with the regulation and its application by the Second Circuit. For example, in *Shin*, an alien's attorney admitted to the IJ that the alien was not in possession of valid immigration documents and that she was, therefore, removable. *See* 547 F.3d 1019, 1023-24 (9th Cir. 2008). When she challenged her removability on appeal, we held that "[o]n the basis of [the alien's] concession, the government's burden is satisfied ." *Id.* at 1024.

Similarly, in *Barragan-Lopez*, an alien admitted the factual allegations contained in the NTA during the pleading stage, including the allegation that he had been convicted of solicitation to possess marijuana for sale, but challenged the legal conclusion that the conviction rendered him removable. *See* 508 F.3d at 902, 905. Because removability was contested, the proceedings entered the evidentiary stage. *Id.* at 902. The IJ applied the categorical approach to the undisputed facts and found that the statute under which the alien was convicted was categorically a removable offense. *Id.* On appeal, the alien argued that the government had not satisfied its burden of establishing that he was removable. *Id.* at 905. We rejected the claim, holding that the alien's admission to "each factual allegation considered by the IJ and the Board for removal" was conclusive concerning the facts and found no error in the application of the categorical approach to find that the alien was removable. *Id.* Therefore, *Barragan-Lopez* is consistent with § 1240.10(d), which provides, in part, that when a removal case enters the evidentiary phase "no further evidence need be received as to any facts admitted during the pleading." 8 C.F.R. § 1240.10(d).

As we have also held, in certain circumstances an alien's admissions may not be used to establish removability. *See,*

*e.g.*, *S-Yong*, 600 F.3d at 1035-36; *Huerta-Guevara*, 321 F.3d at 887-88. These decisions, too, are consistent with § 1240.10.

In *S-Yong*, the NTA charged that the alien had been convicted of a drug crime under California Health and Safety Code section 11379(a), but did not identify the controlled substance. 600 F.3d at 1031. The alien, appearing *pro se*, admitted that the charge in the NTA was accurate. *Id.* The hearing then entered the evidentiary stage and the IJ proceeded to ask the alien about a "conviction record" that was not admitted as evidence, which purportedly stated that the alien's conviction involved MDMA, or ecstacy. *Id.* at 1031-32. In response to this further questioning, the alien admitted that his conviction involved ecstacy. *Id.* Based solely on the alien's statement and the unidentified conviction document not made part of the record, the IJ found that the alien had committed a controlled substance offense within the meaning of the immigration laws and, therefore, that the alien was removable. *Id.* at 1032, 1035.

In *S-Yong*, the alien's pleading-stage admission to the charge in the NTA did not establish all of the facts necessary to determine whether he was removable because:

> California law regulates the possession and sale of many substances that are not regulated by the [federal Controlled Substances Act] and therefore . . . Section 11379 is "categorically broader" than Section 1227(a)(2)(B)(i) of the INA. This means that a conviction under Section 11379 does not necessarily entail a "controlled substance offense" under Section 1227(a)(2)(B)(i) of the immigration statute, and we must look further to determine whether Yong's conviction renders him removable.

*Id.* at 1034 (citations omitted). Accordingly, it was necessary for the IJ to proceed to the § 1240.10(d) evidentiary stage to resolve the issue of whether the alien had been convicted of

a removable offense. Under our jurisprudence, the IJ was required to "apply a 'modified' categorical approach under which [he could] look beyond the language of the statute to a narrow, specified set of documents that are part of the record of conviction." *Tokatly*, 371 F.3d at 620; *see also S-Yong*, 600 F.3d at 1035. This "is a narrow exception" to the usual categorical approach. *S-Yong*, 600 F.3d at 1035. It does not permit considering statements from an alien unless included in the narrow set of documents that are part of the record of conviction. *Id.* Because the only evidence in the record establishing that the alien's offense involved ecstasy was the alien's admission at the evidentiary stage, we reversed the decision. *Id.* at 1035-36.

Similarly, in *Huerta-Guevara*, the NTA alleged that the alien had been convicted of possession of a stolen vehicle under Arizona law and charged that the crime was a removable "theft offense." 321 F.3d at 885-86. However, the Arizona statute criminalized some conduct that would not render the alien removable and the NTA did not specify under what section of the statute the alien was convicted. *Id.* at 885-86, 887. Accordingly, when the alien admitted, during the pleading stage of her removal proceedings, that "she understood the charge [in the NTA] and was not denying it," more evidence was required to determine whether the alien's conviction was for a removable offense. *Id.* at 886. Thus, the proceedings moved from the pleading stage to the evidentiary stage. The government responded by introducing a conviction record that the IJ accepted as conclusive of removability. However, on appeal that record was found to be insufficient to establish that the alien was convicted of a theft offense. *See id.* at 886-87. The government attempted to salvage its case by asking this court to consider statements in the alien's brief on appeal to the BIA. *Id.* at 888. The government argued that the alien's description of her conduct in the brief established her removability. *Id.* We disagreed, holding that even assuming, without deciding, that statements in the alien's brief could be consid-

ered under the modified categorical approach, they were insufficient in the particular case to prove removability. *Id.*

**[3]** In view of the foregoing, we conclude that § 1240.10 is consistent with our relevant jurisprudence and provides the legal framework for deciding this case. In essence, if at the § 1240.10(c) pleading stage an alien, individually or through counsel, makes admissions of fact or concedes removability, and the IJ accepts them, no further evidence concerning the issues of fact admitted or law conceded is necessary. If an alien's admissions or concession leave material issues in dispute, or the IJ is not satisfied with an admission or concession, the proceeding moves to the § 1240.10(d) evidentiary stage. If the issue concerning removability being addressed at that stage requires applying the modified categorical approach, the IJ may rely on facts admitted at the pleading stage, but may not consider any further statements made by the alien unless they are contained in the specific set of documents that are part of the record of conviction. *See* 8 C.F.R. § 1240.10(d) ("When removability is not determined under the provisions of paragraph (c) of this section, the immigration judge . . . shall receive evidence as to any unresolved issues, except that no further evidence need be received as to any facts admitted during the pleading . . . ."); *S-Yong*, 600 F.3d at 1035 (when alien's admissions in pleading stage are not sufficient to establish removability and modified categorical approach must be applied, alien's statements to the immigration judge after the pleading stage regarding the nature of his criminal conduct may not be considered).

**[4]** In view of the foregoing, the BIA properly concluded that Perez-Mejia was removable. In contrast to the NTA in *S-Yong*, the NTA here expressly stated that Perez-Mejia was convicted of possessing cocaine for sale. It is undisputed that cocaine is a prohibited drug under the Controlled Substances Act. *See* 21 U.S.C. § 802(17)(D). It is also not disputed that Perez-Mejia's counsel was authorized to speak for him. When asked how Perez-Mejia wished to plead to the four allega-

tions, which included the charge that he had been convicted of possessing cocaine for sale, his counsel admitted the allegations. The IJ was permitted to rely on this admission. *See Barragan-Lopez*, 508 F.3d at 905; *Shin*, 547 F.3d at 1024; *see also Hoodho*, 558 F.3d at 190-91; *Roman*, 553 F.3d at 185-86. The admission relieved the government of the obligation to present any evidence on the factual question of the nature of the drug offense. *Hoodho*, 558 F.3d at 191.

**[5]** Perez-Mejia's counsel also conceded that the admitted facts rendered Perez-Mejia removable. This concession was correct as a matter of law. *See* 8 U.S.C. § 1182(a)(2)(A)(i)(II) (inadmissibility resulting from conviction of "controlled substance" offense). As we have held, "where the alien concedes removability, 'the government's burden in this regard is satisfied.'" *Shin*, 547 F.3d at 1024 (quoting *Estrada*, 775 F.2d at 1020).

The IJ's question about whether Perez-Mejia was admitting the allegation that he was convicted of possessing cocaine because of the record of conviction that the IJ had received does not indicate that the IJ was dissatisfied with the admission to the factual allegations or the concession of removability and moving from the § 1240.10(c) pleading stage to the § 1240.10(d) evidentiary stage. Rather, upon receiving an affirmative answer to his inquiry, the IJ admitted the record of conviction without further discussion and promptly asked whether Perez-Mejia wanted to designate a country to which to be deported. This is an issue addressed in 8 C.F.R. § 1240.10(f).[9] This order of inquiry confirms that the IJ was

---

[9]In full, 8 C.F.R. § 1240.10(f) provides:

Country of removal. With respect to an arriving alien covered by section 241(b)(1) of the Act, the country, or countries in the alternative, to which the alien may be removed will be determined pursuant to section 241(b)(1) of the Act. In any other case, the immigration judge shall notify the respondent that if he or she is finally ordered removed, the country of removal will in the first

satisfied that Perez-Mejia's admissions and concessions obviated the need to take evidence pursuant to § 1240.10(d).[10]

If the matter had proceeded to the § 1240.10(d) evidentiary stage, the record of conviction, which only stated that Perez-Mejia had been convicted under California Health & Safety Code section 11351 for possessing a controlled substance for sale, would not alone have been sufficient to establish that Perez-Mejia was removable. *See Ruiz-Vidal*, 473 F.3d at 1077-78. If a § 1240.10(d) inquiry were being made, the modified categorical approach would have been applicable and any further statements Perez-Mejia might have made during the evidentiary stage could not be considered because they would not have been included in the narrow set of documents that can be considered under the modified categorical approach. *See S-Yong*, 600 F.3d at 1035-36; *Tokatly*, 371 F.3d at 623.

However, no such additional statements were made or con-

_____

instance be the country designated by the respondent, except as otherwise provided under section 241(b)(2) of the Act, and shall afford him or her an opportunity then and there to make such designation. The immigration judge shall also identify for the record a country, or countries in the alternative, to which the alien's removal may be made pursuant to section 241(b)(2) of the Act if the country of the alien's designation will not accept him or her into its territory, or fails to furnish timely notice of acceptance, or if the alien declines to designate a country. In considering alternative countries of removal, acceptance or the existence of a functioning government is not required with respect to an alternative country described in section 241(b)(1)(C)(i)-(iii) of the Act or a removal country described in section 241(b)(2)(E)(i)-(iv) of the Act. See 8 CFR 241.15.

[10]Perez-Mejia and amicus argue that removal proceedings are not always neatly divided into pleading and evidentiary stages. In this case, however, it is clear that Perez-Mejia's admission to the facts alleged in the notice to appear and his concession of removability were pleadings. Section 1240.10(c) therefore applies.

sidered in this case. After making the relevant admissions and concessions, and designating Mexico as the country to which Perez-Mejia should be deported, his counsel did not discuss, let alone dispute, the adequacy of the proof of removability. Rather, he requested a § 1182(h) waiver of removability and voluntary departure, both of which were rejected.

**[6]** In essence, it appears that Perez-Mejia's counsel decided that Perez-Mejia could not, even under the modified categorical approach, successfully contest the fact that Perez-Mejia had been convicted of possessing cocaine for sale and, therefore, was removable. Instead, he decided to seek relief from removal. As the Seventh Circuit has written, "[c]oncessions of this sort, often motivated by tactical and pragmatic considerations, are routinely made in immigration proceedings." *Selimi*, 312 F.3d at 860; *see also Roman*, 553 F.3d at 187 (admission made as tactical decision by counsel is binding). As the Seventh Circuit concluded in the context of excludability, having formally admitted that he was removable, Perez-Mejia cannot now contend that the government's proof of his removability was insufficient. *See Selimi*, 312 F.3d at 860; *see also Hoodho*, 558 F.3d at 190-91; *Roman*, 553 F.3d at 185-86; *Barragan-Lopez*, 508 F.3d at 905; *Shin*, 547 F.3d at 1024.

In his petition for rehearing, Perez-Mejia contends that the IJ improperly accepted his admission to the factual allegations in the notice to appear because those allegations were "plainly contradicted by record evidence." *Hoodho*, 558 F.3d at 192. He argues that the IJ had reason to believe that his admission was in error because the criminal docket, in contrast to the notice to appear, did not identify the controlled substance involved in his prior drug conviction. We disagree that Perez-Mejia's admissions were contradicted by the record. The docket was silent on the identity of the controlled substance involved in the offense, so it did not *contradict* the notice to appear. Therefore, Perez-Mejia has given us no reason to

believe that his conviction involved any substance other than cocaine.

The petition for rehearing also argues that, regardless of any admissions and concessions offered by an alien at the pleading stage of removal proceedings, the government must always present clear and convincing evidence of the alien's removability independent of the alien's admissions. *See* 8 U.S.C. § 1229a(c)(3)(A) (providing that the government "has the burden of establishing by clear and convincing evidence that . . . the alien is deportable"); *Huerta-Guevara*, 321 F.3d at 886. Under § 1240.10(c), however, "[i]f the respondent admits the factual allegations and admits his or her removability under the charges and the immigration judge is satisfied that no issues of law or fact remain, *the immigration judge may determine that removability as charged has been established by the admissions of the respondent*." 8 C.F.R. § 1240.10(c) (emphasis added). The alien's admissions relieve the government of the burden of producing evidence: "no further evidence need be received as to any facts admitted during the pleading." *Id.* § 1240.10(d). The government's burden to present clear and convincing evidence of deportability accordingly applies only to issues that are not resolved at the pleading stage.

The petition for rehearing further argues that we should set aside the IJ's determination that Perez-Mejia was convicted of a controlled substance offense because that determination was legally erroneous. Perez-Mejia is correct that we may set aside a determination by the IJ that rests on an alien's erroneous concession, at least in some circumstances. *See Mandujano-Real v. Mukasey*, 526 F.3d 585, 588 (9th Cir. 2008) ("The Government does not argue, nor could it, that the IJ's reliance on [the alien's] concession would suffice as a basis for removal if the BIA or the court were to determine that his conviction does not, as a matter of law, constitute an aggravated felony."); *Garcia-Lopez v. Ashcroft*, 334 F.3d 840, 844 n.4 (9th Cir. 2003) (holding that an alien was not bound

by his characterization, in an application for suspension of deportation, of his prior conviction as a "felony," because the characterization was "patently inaccurate," and, more importantly, because an alien's "belief about the nature of his offense is irrelevant to the purely legal question of how the offense was categorized or what the maximum penalty was"); *Huerta-Guevara*, 321 F.3d at 886 ("[W]e may consider an issue regardless of waiver if the issue is purely one of law and the opposing party will suffer no prejudice."). *In this case*, however, Perez-Mejia has offered no reason to believe that either his concessions or the IJ's determinations were erroneous. We thus have no reason to set them aside.[11]

## B. *Estoppel*

Perez-Mejia also argues that the government is estopped from using his 1997 conviction as a basis for removal because DHS knew about the conviction when it granted him LPR status in 2003. This contention is incorrect.

**[7]** "It is well settled . . . that the government may not be estopped on the same terms as a private litigant." *Watkins*, 875 F.2d at 706. "A party seeking to raise estoppel against the government must establish affirmative misconduct going

---

[11]Northwest Immigrant Rights Project argues in its amicus brief that an alien should not be bound by a pleading-stage "concession made in plain error, which would inevitably result in injustice as the person would be erroneously found deportable or precluded from seeking relief from removal." We have no disagreement with that assertion as a general matter, though we also have no occasion *in this case* to define with precision the circumstances in which we may review factual and legal questions that have been conceded by the alien at the pleading stage of removal proceedings, whether under *Mandujano-Real*, *Huerta-Guevara* or any of our other decisions. The facts in this case also do not implicate concerns raised by amicus that removal proceedings sometimes are conducted in large group sessions and that aliens sometimes appear pro se. In *this case*, Perez-Mejia, who was represented by counsel, has presented nothing to suggest that the IJ's determination of removability was erroneous, let alone plainly erroneous, so we have no occasion to explore those questions in detail.

beyond mere negligence; even then, estoppel will only apply where the government's wrongful act will cause a serious injustice, and the public's interest will not suffer undue damage by imposition of the liability." *Morgan v. Gonzales*, 495 F.3d 1084, 1092 (9th Cir. 2007) (quoting *Watkins*, 875 F.2d at 707). Moreover, a party cannot obtain estoppel against the government if he did not lose any rights to which he was entitled. *Id.*

"There is no single test for detecting the presence of affirmative misconduct; each case must be decided on its own particular facts and circumstances. Affirmative misconduct does require an affirmative misrepresentation or affirmative concealment of a material fact by the government, although it does not require that the government intend to mislead a party." *Watkins*, 875 F.2d at 707 (citations omitted).

If a litigant survives this initial inquiry, the court considers four elements to determine if the government is estopped:

> "(1) the party to be estopped must know the facts; (2) he must intend that his conduct shall be acted on or must so act that the party asserting the estoppel has a right to believe it is so intended; (3) the latter must be ignorant of the true facts; and (4) he must rely on the former's conduct to his injury."

*Morgan*, 495 F.3d at 1092 (quoting *Watkins*, 875 F.2d at 709).

**[8]** Both the IJ and the BIA characterized the decision by DHS to grant Perez-Mejia LPR status in 2003 as a "mistake." This was not an erroneous conclusion. It was Perez-Mejia's burden to prove that the decision to grant him LPR status was affirmative misconduct by DHS. *See id.* Perez-Mejia offered no evidence of such misconduct, but rather relied on the fact that he obtained LPR status when he should have been denied it. He now points to nothing in the record that suggests that DHS engaged in any "affirmative misrepresentation or affir-

mative concealment." *Watkins*, 875 F.2d at 707. "[T]he negligent provision of misinformation" by immigration officials does not constitute affirmative misconduct. *Sulit v. Schiltgen*, 213 F.3d 449, 454 (9th Cir. 2000). The evidence suggests no more than such negligence in this case.

Moreover, Perez-Mejia "lost no rights to which [he] was entitled under the immigration laws." *Santiago v. INS*, 526 F.2d 488, 493 (9th Cir. 1975) (en banc). Perez-Mejia concedes that he was ineligible for LPR status when he applied for it and does not contend that obtaining it deprived him of any rights. *See id.* at 491-93 (failure to inform aliens that their entry into United States was unlawful did not deprive them of opportunity to depart and attempt to return lawfully).

**[9]** In essence, the evidence only indicates that the government was negligent in improperly granting Perez-Mejia LPR status. Perez-Mejia benefitted from that error. The government was not estopped from correcting the mistake when it was discovered.[12]

### C.  *Eligibility for Waiver of Admissibility*

Finally, Perez-Mejia argues that the IJ erred in denying his application for a waiver of inadmissibility under 8 U.S.C. § 1182(h) because he was convicted of an aggravated felony.[13]

---

[12]Perez-Mejia asserts that the record is limited on whether DHS engaged in affirmative misconduct because he was not allowed to pursue his estoppel argument before the IJ. This contention is incorrect. The record demonstrates that the IJ expressed his tentative ruling and invited Perez-Mejia to argue estoppel. Perez-Mejia neither proposed to offer any evidence nor made any further argument regarding estoppel.

[13]U.S.C. § 1182(h) provides in pertinent part:

The Attorney General may, in his discretion, waive the application of . . . subparagraph (A)(i)(II) of such subsection insofar as it relates to a single offense of simple possession of 30 grams or less of marijuana if—

Quoting the statute, he contends that a conviction for an aggravated felony only renders an alien admitted as an LPR ineligible for a § 1182(h) waiver if the conviction occurred "since the date of such admission." 8 U.S.C. § 1182(h). Therefore, Perez-Mejia asserts that his 1997 conviction does not render him ineligible for a waiver because it predated his admission as an LPR.

However, the BIA found that he was ineligible for a § 1182(h) waiver on a different basis. The BIA found that he was ineligible for a waiver because Perez-Mejia's "offense was a violation of a state controlled substance law." We review the BIA's decision where it differs from that of the IJ. *See Hosseini*, 471 F.3d at 957.

**[10]** Where, as here, an alien is charged with being removable on the basis of a conviction for a controlled substance offense, 8 U.S.C. 1182(a)(2)(A)(i)(II), a waiver is available only when the alien was convicted of a "single offense of sim-

(1) . . .

(B) in the case of an immigrant who is the spouse, parent, son, or daughter of a citizen of the United States or an alien lawfully admitted for permanent residence if it is established to the satisfaction of the Attorney General that the alien's denial of admission would result in extreme hardship to the United States citizen or lawfully resident spouse, parent, son, or daughter of such alien . . . .

No waiver shall be granted under this subsection in the case of an alien who has previously been admitted to the United States as an alien lawfully admitted for permanent residence if either since the date of such admission the alien has been convicted of an aggravated felony or the alien has not lawfully resided continuously in the United States for a period of not less than 7 years immediately preceding the date of initiation of proceedings to remove the alien from the United States. No court shall have jurisdiction to review a decision of the Attorney General to grant or deny a waiver under this subsection.

ple possession of 30 grams or less of marijuana." 8 U.S.C. § 1182(h); *see Sum v. Holder*, 602 F.3d 1092, 1094 (9th Cir. 2010). Here, Perez-Mejia admitted that he was convicted of possession of cocaine for sale, thus rendering him ineligible for the waiver, regardless of when he was convicted of the crime. *See Sum*, 602 F.3d at 1094. Although the IJ did not rely on this rationale in his final decision, the BIA correctly based its decision on Perez-Mejia's conviction for a controlled substance offense. As we are reviewing the BIA's decision on this issue, and it is correct, Perez-Mejia's claim is unmeritorious.

## III.   CONCLUSION

By admitting at the pleading stage that he was convicted of possessing cocaine for sale and conceding that he was, therefore, removable, Perez-Mejia relieved the government of its burden of offering further evidence to prove that he was removable. The government is not estopped by its error in granting Perez-Mejia LPR status from correcting its mistake and ordering his removal. Perez-Mejia's admission to the cocaine offense made him ineligible for a waiver of removability under § 1182(h). Therefore, the petition for review is unmeritorious.

**DENIED.**