UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

ZENAIDA ESPERANZA CHULE-LOPEZ;
MARTA ALICIA CHULE-LOPZ, AKA
Marta Alicia Chule-Lopez,

Petitioners,

v.

MERRICK B. GARLAND, Attorney
General,

Respondent.

No.    20-70987

Agency Nos.    A208-589-358
A208-589-359

ORDER

Before:  W. FLETCHER, WATFORD, and COLLINS, Circuit Judges.

Judge W. Fletcher and Judge Watford vote to grant the petition for panel rehearing; Judge Collins votes to deny the petition.  The petition for panel rehearing, filed July 30, 2021, is GRANTED.  Because we grant the petition for panel rehearing, the petition for rehearing en banc is moot.  The memorandum disposition filed June 16, 2021, is amended, and the amended version has been filed concurrently with this order.  Further petitions for rehearing or rehearing en banc may be filed.

**NOT FOR PUBLICATION**

**UNITED STATES COURT OF APPEALS**

**FOR THE NINTH CIRCUIT**

FILED

OCT 14 2021

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| ZENAIDA ESPERANZA CHULE-LOPEZ; MARTA ALICIA CHULE-LOPZ, AKA Marta Alicia Chule-Lopez, <br><br> Petitioners, <br><br> v. <br><br> MERRICK B. GARLAND, Attorney General, <br><br> Respondent. | No.   20-70987 <br><br> Agency Nos.   A208-589-358 <br>                       A208-589-359 <br><br> AMENDED <br> MEMORANDUM[*] |

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted June 7, 2021[**]
Seattle, Washington

Before:  W. FLETCHER, WATFORD, and COLLINS, Circuit Judges.
Partial Concurrence and Partial Dissent by Judge COLLINS

Petitioner Zenaida Esperanza Chule-Lopez ("Lead Petitioner") and her

minor daughter (together, "Petitioners") are natives and citizens of Guatemala.

---

[*]     This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]     The panel unanimously concludes this case is suitable for decision without oral argument.  *See* Fed. R. App. P. 34(a)(2).

They petition for review of a decision by the Board of Immigration Appeals ("BIA") affirming the order of an immigration judge ("IJ") denying their applications for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). We have jurisdiction under 8 U.S.C. § 1252, and we grant in part and deny in part the petition for review.

1. Petitioners claim they are eligible for asylum and withholding of removal based on Lead Petitioner's membership in a proposed particular social group ("PSG") consisting of "female victims of domestic violence or gender based violence." The IJ recognized that this proposed PSG was similar to the group recognized in *Matter of A-R-C-G-*, 26 I. & N. Dec. 388, 389 (BIA 2014), which consisted of "married women in Guatemala who are unable to leave their relationship," but found that Lead Petitioner's circumstances were factually distinguishable from those in *Matter of A-R-C-G-*. The IJ then concluded that Lead Petitioner was not a member of the PSG recognized in *Matter of A-R-C-G-* and denied Petitioners' claim without considering whether their distinct proposed PSG was cognizable or whether there was a nexus between Lead Petitioner's persecution and her membership in the proposed group.[1]

---

[1] The dissent identifies a no-nexus finding in the IJ's statement that "respondent has not established that she has a reasonable fear of future persecution on account of her membership in a particular social group or on account of her race/nationality." Dissent at 5. But this one-sentence conclusion to the IJ's asylum

The BIA considered the proposed PSG on its own terms and agreed with the IJ's denial of Petitioners' PSG claim, but on different grounds. After the IJ issued her decision, the Attorney General issued a decision in *Matter of A-B-*, 27 I. & N. Dec. 316 (A.G. 2018) ("*A-B- I*"), overruling *Matter of A-R-C-G-* and establishing new principles for asylum claims by victims of domestic violence. The BIA then found that Petitioners' proposed PSG was not cognizable in light of *A-B- I*.

Like the IJ, the BIA relied solely on its conclusion that Lead Petitioner was not a member of a valid PSG and did not address whether there was a nexus between her persecution and her membership in the proposed group. The BIA stated that it agreed with the IJ "that the respondent did not demonstrate membership in a particular social group and did not establish that any harm feared would be on account of a protected ground." But, as noted above, the IJ never found that Lead Petitioner's persecution was not "on account of" her membership in the proposed group. Instead, the IJ merely determined that Lead Petitioner was not a member of a PSG. Thus, the BIA's denial of Petitioners' PSG claim rested exclusively on its finding that the proposed PSG was not cognizable.

---

analysis merely restates the general burden that Petitioners failed to meet. The actual findings the IJ made to support her conclusion that Petitioners failed to meet their burden are: (1) that Lead Petitioner was not a member of a PSG (and thus any fear could not be on account of such membership); and (2) that there was no nexus between Lead Petitioner's persecution and her indigenous status. The IJ never made a no-nexus finding with respect to Petitioners' proposed PSG.

After this case was submitted, the Attorney General vacated *A-B- I* and directed the BIA to follow pre-*A-B- I* precedent, including *Matter of A-R-C-G-*. *Matter of A-B-*, 28 I. & N. Dec. 307, 308 (A.G. 2021) ("*A-B- III*"). When the BIA issued its decision in this case, it did not have the benefit of the Attorney General's decision in *A-B- III*, and the BIA's rejection of Petitioners' proposed PSG rested on the legal principles of the now-vacated decision in *A-B- I*. Thus, we remand Petitioners' PSG-based claims for asylum and withholding of removal for reconsideration in light of *A-B- III*.

The dissent asserts that we improperly dispose of this case on a ground never raised by Petitioners, in what amounts to a "takeover of the appeal." Dissent at 5. That is not the case. Petitioners have argued on appeal that the evidence supports a finding that there was a nexus between Lead Petitioner's persecution and her membership in the proposed PSG. In making that argument, Petitioners mistakenly assumed there was an adverse finding on that issue which they needed to overcome. But Petitioners did not, by virtue of that mistake, forfeit their argument that a nexus exists. We have declined to decide whether Petitioners are correct that the evidence supports a nexus finding, choosing instead to remand the case so that the BIA can consider that issue (along with the cognizability of the proposed PSG) in the first instance. In doing so, we respond directly to arguments

that Petitioners presented; we do not introduce an entirely new ground for relief, as in *United States v. Sineneng-Smith*, 140 S. Ct. 1575, 1581 (2020).

**2.** Petitioners also claim they are eligible for asylum and withholding of removal on the basis of Lead Petitioner's status as an indigenous Guatemalan. However, the BIA's determination that Petitioners failed to establish a pattern or practice of persecution against indigenous Guatemalan women is supported by substantial evidence. The country conditions evidence in the record demonstrates that indigenous Guatemalans, and particularly women, experience discrimination, but does not compel the conclusion that this discrimination amounts to persecution. The BIA properly denied Petitioners' application on this ground.

**3.** Petitioners' brief recited the legal standard governing CAT claims but did not provide any argument why the BIA erred in denying CAT protection. Accordingly, we deem any argument as to this claim waived. *See Corro-Barragan v. Holder*, 718 F.3d 1174, 1177 n.5 (9th Cir. 2013).

**4.** Petitioners argue that the BIA erred by failing to review on appeal Petitioners' objection to the IJ's decision to exclude from evidence two declarations. The BIA erred by failing to address this objection and must consider it on remand to the extent the objection is relevant to Petitioners' PSG-based claims for asylum and withholding of removal. *See Kaur v. Wilkinson*, 986 F.3d 1216, 1229 (9th Cir. 2021) ("The BIA is not free to ignore arguments raised by a

petitioner." (internal quotations and citations omitted)). As to Petitioners'

indigenous status and CAT claims, we conclude that the error was harmless

because Petitioners did not demonstrate that they were prejudiced by the exclusion.

*See Pagayon v. Holder*, 675 F.3d 1182, 1191–92 (9th Cir. 2011) (finding that the

IJ's exclusion of evidence and testimony did not amount to a due process violation

because the petitioner did not establish prejudice).

**PETITION FOR REVIEW GRANTED in part and DENIED in part;**

**CASE REMANDED.**

*Chule-Lopez, et al. v. Garland*, No. 20-70987

COLLINS, Circuit Judge, concurring in part and dissenting in part:

I concurred in my colleague's original memorandum disposition in this case, *see Chule-Lopez v. Garland*, 850 F. App'x 564 (9th Cir. 2021), and I still believe that decision to be correct. However, in section 1 of the amended memorandum, the majority now grants the petition for review based on a ground that Petitioners have *never* raised in this court—not in their opening or reply briefs, and not even in their petition for rehearing. This is wholly improper, and I dissent from the revised sections of the amended memorandum disposition.

In their opening brief in this court, Petitioners affirmatively conceded that (among other grounds for denying relief) the IJ found "no nexus to a protected ground" and that the BIA likewise held "that the harm Ms. Chilel-Lopez suffered was not on account of a protected ground."[1] Petitioners argued that this conclusion rested on the erroneous view that Chilel-Lopez was attacked by her domestic partner simply because "they ha[d] a preexisting relationship" when, in fact, "her gender was at least 'one central reason' for her persecution." In their reply brief, Petitioners again argued that the IJ and the BIA "erred in finding that the harm that [Chilel-Lopez] endured was not on account of her gender or her indigenous Mam ethnicity." Petitioners asserted that Chilel-Lopez had established that her "gender

---

[1] Our case caption apparently renders Chilel-Lopez's name incorrectly.

and indigenous ethnicity were central reasons why she was harmed" by her former domestic partner, given that there were "no other discernable reasons why [he] beat [her] on a weekly basis other than because she is an indigenous woman incapable of reporting the abuse to the authorities." Petitioners acknowledged that Chilel-Lopez had not "explicitly testif[ied]" that her partner's "motivations for beating her on a weekly basis were based on her gender and Mam ethnicity," but they argued that "the country conditions evidence compels the conclusion that [he] harmed [her] because she is a female and indigenous."

In our original memorandum disposition, we rejected this argument, concluding that "even assuming that the BIA erred in rejecting Lead Petitioner's proposed particular social group ('PSG') of 'female victims of domestic violence or gender based violence,' the record does not compel the conclusion that Lead Petitioner's former domestic partner abused her on account of this PSG or her identity as an indigenous Guatemalan." 850 F. App'x at 565.

In seeking rehearing, Petitioners again acknowledged that the agency had concluded that Chilel-Lopez failed to establish the requisite nexus to a protected ground (citations omitted):

> [T]he IJ held that Chilel-Lopez failed to demonstrate that the persecution was on account of her membership in a particular social group, which Chilel-Lopez defined as female victims of domestic violence or gender based violence. The BIA agreed that [Chilel-Lopez] did not demonstrate membership in a particular social group nor did she establish that any harm

2

feared would be on account of a protected ground, thus the BIA dismissed [Petitioners'] appeal on March 17, 2020.

These decisions all agree that the abuse [Chilel-Lopez] suffered constituted past persecution, but also find that she failed to meet her burden of proof because of insufficient evidence to demonstrate that her partner abused her on account of membership to her particular social group or her identity as an indigenous Guatemalan.

Petitioners' petition for rehearing then proceeded to argue why we are wrong to have upheld the agency's no-nexus finding:

[Chilel-Lopez] submits that being an indigenous Guatemalan woman was at least one central reason she was targeted by ex spouse, Felipe Lopez. It is clear that Felipe targeted [Chilel-Lopez] because of her gender since he intended to physically abuse her and take advantage of their domestic relationship. Felipe Lopez demonstrated he is hostile towards Guatemalan woman based on the severe harm he inflicted upon [Chilel-Lopez]. Furthermore, he targeted [her] because she was his wife. [Her] declaration states that Felipe went to look for her at her parents['] house and threatened to kill her for leaving him.

This demonstrates how Felipe actively targeted [Chilel-Lopez] based on their domestic relationship and his perception that [she] could not make the decision to end the relationship and leave. In Guatemala a husband in a domestic relationship has the complete right to tell his wife what she can and cannot do. Felipe's threat also demonstrates his perception that women, particular[ly] married women, should be subordinate to their husbands. The Guatemalan culture stigmatizes wom[e]n as "bad wom[e]n" if they challenge this domestic structure.

In granting rehearing, the majority does not adopt Petitioners' argument that the record compels a finding of a nexus to a protected ground. Instead, the majority remarkably concludes that Petitioners have been wrong all along in

3

conceding that the agency's decisions rested on a no-nexus finding.  Invoking a ground that Petitioners have *never* raised—not even in their petition for rehearing—the majority now announces that the IJ actually did not consider "whether there was a nexus between Lead Petitioner's persecution and her membership in the proposed group." *See* Amended Mem. Dispo. at 2.  Nor, according to the majority, did the BIA: "Like the IJ, the BIA relied solely on its conclusion that Lead Petitioner was not a member of a valid PSG and did not address whether there was a nexus between her persecution and her membership in the proposed group." *Id*. at 3.  Having read out of the record what Petitioners have always conceded was there, the majority then remands the case for reconsideration in light of new developments concerning the other issues raised by Petitioners.  This disposition departs "drastically from the principle of party presentation" and is clearly improper.  *United States v. Sineneng-Smith*, 140 S. Ct. 1575, 1578 (2020).  "[A]s a general rule, our system is designed around the premise that parties represented by competent counsel know what is best for them, and are responsible for advancing the facts and argument entitling them to relief.  In short: Courts are essentially passive instruments of government.  They do not, or should not, sally forth each day looking for wrongs to right.  They wait for cases to come to them, and when cases arise, courts normally decide only questions presented by the parties." *Id*. at 1579 (simplified).

4

Here, "[n]o extraordinary circumstances justif[y] the [majority's] takeover of the appeal," *id*. at 1581, especially where, as here, the majority's takeover comes belatedly on rehearing. *See*, *e.g.*, *Fields v. Palmdale Sch. Dist.*, 447 F.3d 1187, 1190 (9th Cir. 2006) ("We do not consider on rehearing new issues previously not raised, briefed or argued."). Although the IJ's ruling is not a model of clarity, its discussion ends with the conclusion that Chilel-Lopez had "not established that she has a reasonable fear of future persecution *on account of her membership in a particular social group* or on account of her race/nationality—Mam indigenous community[—]if she were returned to Guatemala" (emphasis added), and Petitioners (and we) reasonably construed that ruling as resting in part on a no-nexus finding. The majority has now had a *sua sponte* change of heart as to how it reads the IJ order, *see* Amended Mem. Dispo. at 2 n.1, but we were right before in accepting Petitioners' reasonable concession, throughout this proceeding, that the IJ *did* make such a nexus finding. And the majority's assertion that the BIA did not rely on a no-nexus conclusion is simply false, as the BIA's own words make clear (emphasis added and citations omitted):

> Moreover, while the Immigration Judge considered that [Chilel-Lopez] was an indigenous Mam, she properly determined that [Chilel-Lopez] failed to show that she was persecuted by anyone or faced danger of future persecution *on account of her race, ethnicity, religion, or membership in a particular social group*. There is no indication that the respondent's ex-partner sought to harm the respondent *for any*

*reason potentially tied to a protected ground*, such as her indigenous Mam ethnicity.

The majority asserts that, by "mistakenly" conceding that the IJ had made a "nexus" finding, Petitioners "did not, by virtue of that mistake, forfeit their argument *that a nexus exists*." *See* Amended Mem. Dispo. at 4 (emphasis added). This observation is entirely beside the point, because I have not contended that Petitioners have forfeited "their argument that a nexus exists." On the contrary, our prior memorandum properly rejected *that* argument, not based on forfeiture, but on the merits. What Petitioners did forfeit—at every stage of these proceedings—was any argument that the agency *did not make* a finding that no "nexus exists." The majority's belated and *sua sponte* undoing of Petitioners' repeated and explicit concession on this latter point is an egregious example of pushing aside the lawyers' arguments and "sally[ing] forth . . . looking for wrongs to right." *Sineneng-Smith*, 140 S. Ct. at 1579.

Because there is no proper basis for granting rehearing in this case, I dissent from Parts 1 and 4 of the amended memorandum disposition. I concur in Parts 2 and 3, which adhere to our previous rulings in this case.